No. 95,830

STATE OF KANSAS, *Appellant*, v. TAMMY HOECK, *Appellee*.

(163 P.3d 252)

Opinion
filed July 6, 2007.

*Ernest H. Richardson*, special prosecutor, argued the cause, and *Richard N. Raleigh*, special prosecutor, and *Phill Kline*, attorney general, were with him on the brief for appellant.

*Michael S. Holland, II,* of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: At the heart of this appeal is the issue of whether this court has correctly construed the holding in *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984), establishing the good faith exception to the Fourth Amendment exclusionary rule. More specifically, has this court improperly restricted the good faith exception by applying the test of whether there is a substantial basis for the determination of probable cause to both the determination of a search warrant's validity and the determination of whether the good faith exception allows the use of the fruits of a search conducted pursuant to an invalid warrant? We conclude the answer to this question is "yes" and that, by imposing this restriction, prior Kansas cases have effectively nullified the good faith exception of *Leon.* We disapprove this restriction and adopt the *Leon* good faith exception.

## *The Supporting Affidavit*

The focal point of this appeal is the affidavit used to support a search warrant for the residence of defendant Tammy Hoeck. Pratt Police Detective Jeff Ward applied for the search warrant and, in his supporting affidavit, stated that he believed that Hoeck was, in various ways over a period of time, stealing from her employer, PrimeTime Stores, Inc., a subsidiary of Tri-Lakes Petroleum, Inc. The parties' arguments do not question whether the affidavit establishes probable cause that Hoeck was involved in criminal activity; the issue is whether the affidavit established a nexus between the crime and Hoeck's residence sufficient to provide a basis to search the residence for evidence relating to the crimes.

In the affidavit, Detective Ward claimed that Michael J. Johnson, the Retail Operations Manager for PrimeTime Stores, Inc., gave him most of the information contained in the affidavit. He also received from Johnson information attributed to Mark Gauntt, an investigator with the Kansas Lottery Commission. This led to an investigation concerning several larcenous schemes by Hoeck, in-

cluding embezzlement, theft of inventory, lottery ticket fraud, and credit card discrepancies.

Johnson told Detective Ward that he was responsible for overseeing all Kansas and Missouri PrimeTime stores. This job duty included overseeing district managers who were responsible for stores in each state. There were five Kansas store locations—one each in Pratt, Salina, Inman, and two stores in Newton.

Johnson further indicated that, in January 2004, he became aware of an embezzlement scheme in the PrimeTime store in Pratt. During a subsequent internal investigation, he compared corporate computer records with handwritten daily perpetual inventory (DPI) reports and cash register receipts. Johnson determined that money had been stolen from the Pratt store through fraudulent merchandise sales records.

Hoeck was the manager of the Pratt store and was also the district manager responsible for overseeing the four other Kansas stores. Johnson told Detective Ward that, since his appointment as Regional Operations Manager, he had trouble obtaining DPI reports from Hoeck for the Pratt store. He found this odd because Hoeck regularly required store managers in the other Kansas stores to submit such reports.

According to Johnson, auditors found that Hoeck had not submitted any DPI reports to her supervisor from May 2002 until January 2004. Plus, inventory records indicated a loss in merchandise from the Pratt store in excess of $70,000. Johnson further claimed that the sales receipts for that time period balanced with the cash receipts, indicating that the person involved in the thefts, *i.e.*, Hoeck, knew of the discrepancy and altered the sales records so that the daily reports balanced. Then, after being confronted in January 2004 with her failure to provide proper documentation, Hoeck began submitting DPI reports. The loss of merchandise subsequently lowered to what Johnson referred to as a "normal" level.

Johnson went on to tell Detective Ward that he had spoken to Agent Mark Gauntt of the Kansas Lottery Commission. Gauntt informed Johnson that, beginning in January 2004, there was a pending investigation concerning the theft of lottery tickets. On

March 4, 2005, Kirk Ives, a Pratt County Sheriff's Deputy, told Gauntt that he had recovered two packs of Kansas lottery tickets at the entrance to the Pratt County landfill. Ives reported that one of the packs contained orange tickets from game No. 397, bearing numbers 000 to 149. That pack had been assigned to the PrimeTime store in Pratt. The other pack contained blue tickets from game No. 287, bearing numbers 001 to 029. This pack had been assigned to the PrimeTime store in Salina. But all winning tickets in the blue and orange packs were validated at the PrimeTime store in Pratt on March 2, 2005, at 5:48 p.m.

After this discovery, Gauntt contacted Johnson, who confirmed that Hoeck had been in both Salina and Pratt on March 2, 2005. Johnson also told Gauntt about the embezzlement scheme. Gauntt then learned that the company's end-of-day sales reports printed from the lottery terminal did not match computer records held by the Kansas Lottery for the period between January 2004 and March 2004. After receiving this information, Gauntt began an in-depth investigation and compared the actual sales reports from the PrimeTime store in Pratt with records held by the Kansas Lottery.

As a result of this comparison, Gauntt discovered that the reports from the Pratt store showed a much larger validation difference than the reports held by the Kansas Lottery. Moreover, the discrepancies were all in even $100 amounts. Gauntt further compared the Pratt store's lottery reports from one day to the next and detected discrepancies in the numbers on the preprinted ticket stock used in the store's lottery terminal. He also found discrepancies in activity between the store's lottery reports and the store's lottery terminal.

What is more, Gauntt examined several of the validation reports and thought that true and accurate reports had been scanned into a personal computer and the figures were then altered to place erroneous dates, times, and dollar amounts in the reports. He believed that these erroneous reports were then printed on ticket stock obtained from the store and turned into the corporate office as the actual report. These alterations, according to Gauntt, would explain the discrepancies between the validation reports and the amounts actually validated and would also explain why some of the

numbers on the reports appeared to have been slightly out of line with other "characters/numbers."

Gauntt claimed that the scheme continued from January 7, 2004, to March 31, 2004, at which time a new lottery terminal was placed inside the Pratt store. Company records indicated that Hoeck was the sole employee present during times when all discrepancies were prepared and submitted to the company. Gauntt estimated that approximately $30,000 had been fraudulently obtained by Hoeck.

In addition to the above information, Gauntt also discovered that from a period between November 2004 until the time the affidavit for the search warrant was issued, all or a majority of 40 packs of lottery tickets were validated at the same time in the Pratt store. In one instance, 8 packs of tickets were validated at the same time after the Pratt store was closed for business. During the same time period, Gauntt found that 13 packs of tickets assigned to the PrimeTime store in Salina had been validated at the PrimeTime stores in Pratt, Newton, and Inman. Hoeck was the only person having access to all of these PrimeTime stores. Gauntt further found that tickets from the Pratt store were validated at the store in Salina on the same days that company records revealed that Hoeck was in Salina. Similarly, company records indicated that Hoeck was in Salina on the same day that Salina tickets were validated in Pratt and Newton.

Moreover, Johnson informed Detective Ward that from April 19, 2004, to April 26, 2004, Hoeck turned in credit card reports to the parent company reflecting sales lower than the charges actually made to customers' credit cards, which would have allowed Hoeck to keep the difference in the amounts. Johnson stated that this activity stopped when he confronted Hoeck about the discrepancies.

### Search and District Court Proceedings

Based on the foregoing statements in the affidavit, Ward received a warrant to search Hoeck's residence. When officers executed the warrant and conducted the search, they seized numerous items from Hoeck's home, including a personal computer, a scan-

ner, a printer, a laptop computer, a laptop case with removable floppy drive, a file with receipts from PrimeTime and handwritten notes, an envelope with credit card receipts with original signatures, a notebook with PrimeTime internal documents, audit reports for July 2, 2004, and April 29, 2004, and a roll of Kansas Lottery terminal stock.

The State ultimately charged Hoeck with 47 counts of felony theft and 69 counts of misdemeanor theft. Before trial, Hoeck filed a motion to suppress the evidence seized from her residence based on the argument that there was no nexus between the alleged criminal activity and Hoeck's residence. The trial court granted Hoeck's motion and also ruled that the good faith exception to the exclusionary rule did not apply.

### Court of Appeals' Decision

The State brought an interlocutory appeal before the Court of Appeals. The Court of Appeals ultimately affirmed the trial court in *State v. Hoeck*, No. 95,830, unpublished opinion filed September 15, 2006.

The State first argued that the search warrant was valid because there were sufficient facts in the affidavit from which the magistrate could infer that the evidence would be found at Hoeck's residence. Second, the State argued that even if the warrant was invalid, the good faith exception to the exclusionary rule applied to prevent suppression of the evidence.

With respect to the validity of the warrant, the State contended that Detective Ward was not required to present in his affidavit facts connecting Hoeck's residence with the crimes. The Court of Appeals rejected the State's contention and affirmed the trial court on this issue, ruling that the affidavit failed to provide the magistrate with a substantial basis to find probable cause for the issuance of a warrant for Hoeck's residence. The State does not seek review of this issue. Therefore, the issue regarding the validity of the search warrant is not before this court.

Regarding the applicability of the good faith exception, the State argued that under *Leon*, evidence obtained by officers acting in reasonable reliance on a search warrant issued by a magistrate,

which is subsequently held to be invalid, is subject to exclusion *only* if one of four specific circumstances exist: (1) the magistrate who issued the warrant was deliberately misled by false information; (2) the magistrate completely abandoned his or her neutral and detached role; (3) the warrant is so lacking in specificity that the officers cannot determine the place of the search or the items to be seized; or (4) the warrant bears so little indicia of probable cause that it is entirely unreasonable for an officer to believe the warrant is valid. The State contended that, because none of these four circumstances existed in this case, the evidence should not have been suppressed.

The Court of Appeals rejected the State's argument, observing that in *State v. Longbine*, 257 Kan. 713, 721-22, 896 P.2d 367 (1995), *disapproved on other grounds by State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006), this court held that *Leon*'s good faith exception will not be applied where the warrant was based on an affidavit that failed to provide a substantial basis for determining the existence of probable cause. Noting its duty to follow Kansas Supreme Court precedent, the panel concluded that, because it had already determined that the affidavit did not provide the magistrate with a substantial basis to issue the warrant, the good faith exception did not apply. The Court of Appeals held, therefore, that the trial court properly suppressed the evidence.

The State, recognizing that the lower courts were required to follow our precedent, petitioned for our review of the lower courts' decisions and asked us to review our prior holding in *Longbine* and the case on which it relied, *State v. Doile*, 244 Kan. 493, 495, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990). We granted the State's petition for review of the issue; consequently, our jurisdiction arises under K.S.A. 20-3018(b).

### Standard of Review

The question of whether this court has correctly construed the *Leon* good faith exception is one of law. Appellate courts have unlimited review over questions of law. See *State v. Porting*, 281

Kan. 320, 324, 130 P.3d 1173 (2006); *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2006).

## United States v. Leon

In *Leon*, the United States Supreme Court decided that "the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900; see 468 U.S. at 918-22.

The holding resulted from a challenge to a search warrant that was issued for several vehicles and three residences in Burbank, California; one of the residences belonged to Leon. The affidavit indicated that a confidential informant told officers that two persons, identified as Armando and Patsy, were selling large quantities of drugs from their Price Drive residence in Burbank. The informant had witnessed a drug sale by Patsy at this residence 5 months prior to issuance of the warrant and had seen a shoe box containing a large amount of cash belonging to her. According to the informant, Armando and Patsy usually kept only small quantities of drugs at the Price Drive residence and stored the remaining drugs at another Burbank location.

On the basis of the informant's statements, the Burbank police initiated an investigation of three Burbank residences. They discovered that cars parked at the Price Drive residence belonged to Armando Sanchez and Patsy Stewart. Sanchez had been previously arrested for possession of marijuana, but Stewart had no previous criminal record. The officers observed a vehicle belonging to Ricardo Del Castillo parked at the Park Drive residence and later saw him leave the residence carrying a small paper sack. Del Castillo had previously been arrested for possession of 50 pounds of marijuana. When officers checked his probation records, they found that Leon was Del Castillo's employer.

Leon had previously been arrested on drug charges, and an informant had told police that, at the time of his arrest, Leon was involved in the importation of drugs into the country. Before the

current investigation began, another informant told police that Leon stored a large quantity of drugs at his residence. Officers learned that Leon's residence was on Sunset Canyon in Burbank. They subsequently saw several individuals, at least one of whom had prior drug involvement, arrive at the Price Drive residence and leave with small packages. They further observed a variety of other material activity at the Price Drive residence, the Sunset Canyon residence, and a third residence on Via Magdalena.

Based on this information, Officer Rombach of the Burbank Police Department submitted an application for a search warrant for the three residences. The magistrate issued a "facially valid search warrant" which yielded "large quantities of drugs" at the Sunset Canyon and Magdalena residences and a "small quantity" at the Price Drive residence. 468 U.S. at 902. The defendants, owners of the residences, were indicted on a number of drug-related counts, including conspiracy to possess and distribute cocaine.

The defendants then filed motions to suppress the evidence seized under the search warrant. The federal district court granted the motions to suppress, concluding that the affidavit was insufficient to establish probable cause. A divided panel of the Ninth Circuit Court of Appeals affirmed. 701 F.2d 187 (9th Cir. 1983). With regard to the Sunset Canyon residence, the appellate court determined that the search warrant was not supported by probable cause because "the affidavit included no facts indicating the basis for the informants' statements concerning respondent Leon's criminal activities and was devoid of information establishing the informants' reliability" and because "these deficiencies had not been cured by a police investigation." *Leon*, 468 U.S. at 905.

The United States Supreme Court granted the Government's petition for certiorari, in which the Government "expressly declined" to seek review of the probable cause determination. Accepting the appellate court's determination that there was *no probable cause*, the Supreme Court addressed the question of whether "the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in a reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. at 905.

The Court discussed at length the policy and rationale of the Fourth Amendment exclusionary rule and noted the Court's strong preference for the involvement of a neutral magistrate in a decision to search. The Court cited its previous statement that " 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fail.' [Citations omitted.]" 468 U.S. at 914. The Court justified this distinction by noting that reasonable minds can differ as to the adequacy of an affidavit; as a consequence, the Court concluded that great deference should be given to the magistrate's decision. 468 U.S. at 914.

The deference is not boundless, however. The *Leon* Court recognized there are at least three situations when a reviewing court may determine that deference should not be accorded to the issuing magistrate's probable cause determination, that is, where a warrant may be invalid. The first is if the probable cause determination is based on the knowing or reckless falsity of the affidavit supporting the warrant. 468 U.S. at 914 (citing *Franks v. Delaware,* 438 U.S. 154, 165, 57 L. Ed. 2d 667, 98 S. Ct. 2674 [1978]). Second, a warrant will be invalidated when the issuing magistrate was not " 'neutral and detached,' " that is to say, when a magistrate is serving "merely as a rubber stamp for the police." *Leon,* 468 U.S. at 914 (quoting *Aguilar v. Texas,* 378 U.S. 108, 111, 12 L. Ed. 2d 723, 84 S. Ct. 1509 [1964]). Third, "even if the warrant application was supported by more than a 'bare bones' affidavit," a warrant will be invalidated if it is "based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " *Leon,* 468 U.S. at 915 (quoting *Illinois v. Gates,* 462 U.S. 213, 239, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 [1983]).

The *Leon* Court then weighed the appropriate remedy when one of these defects caused an unconstitutional search and considered whether the exclusionary rule would serve a deterrent effect when any of these situations apply. The Court concluded that excluding evidence obtained when officers purposefully deceived the magistrate could deter future wrongdoing. On the other hand, because the exclusionary rule is not designed to punish the errors of judges and magistrates (468 U.S. at 916), the Court held that the evidence

should not be suppressed, *i.e.*, the exclusionary rule should not be applied, where officers obtained evidence while acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even though the warrant was ultimately found to be invalid. 468 U.S. at 918-22. The Court further explained:

"In most such cases [where an officer has obtained a warrant in objective good faith from a magistrate who acted within his or her scope], there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." 468 U.S. at 920-21.

Thus, in the usual case, the Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 468 U.S. at 922.

The *Leon* Court recognized that not all cases would be considered "usual" and, consequently, there would be some cases where the exclusionary rule would apply even "where an officer has obtained a warrant and abided by its terms." 468 U.S. at 922. In discussing the possible parameters for application of a good faith exception, the Court rejected reliance on an officer's subjective good faith. The Court explained: " 'If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' [Citation omitted.]" 468 U.S. at 915 n.13.

Rather, the Court recognized that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be *objectively reasonable*, [citation omitted], and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." (Emphasis added.) 468 U.S. at 922-23. The Court recognized four circumstances where the officer's belief would not be objectively reasonable and, therefore, suppression

"remains an appropriate remedy." 468 U.S. at 922-23. The exclusionary rule still applies where: (1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit—in other words, the affidavit was so "bare bones"—that it was entirely unreasonable for the officer to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized. 468 U.S. at 923.

The Court seemed to recognize that typically—or in the "usual" case—the good faith exception would be available if a magistrate issued a warrant. " '[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' [citation omitted], for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' [Citation omitted.]" 468 U.S. at 922.

With this discussion of the *Leon* analysis in mind, we turn to the specific issue before us of what probable cause standards were set when the Court iterated these principles. Our careful review of the decision finds only two probable cause standards mentioned. These two standards, when placed in the context of the analysis, pinpoint two ends of a probable cause continuum. At one end are affidavits that " 'provide the magistrate with a *substantial basis for determining the existence of probable cause.'* " (Emphasis added.) 468 U.S. at 915. In those cases, there is a valid warrant. See *State v. Hicks*, 282 Kan. 599, 603, 147 P.3d 1076 (2006). At the other end of the continuum are the so-called "bare bones" affidavits, those affidavits so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. This is the situation enumerated above as the third circumstance where an officer's reliance would be objectively unreasonable and suppression would be appropriate. In the analytical space between the ends of the continuum are those cases where the warrant is ultimately found to be unsupported by an affidavit containing a substantial basis for the determination of probable cause, but where officers executed the warrant in objective good faith. It is in this analytical space between

the extremes on the continuum that the good faith exception applies. In those cases where the good faith exception applies, the affidavits do not provide a substantial basis for the determination of probable cause but do provide some indicia of probable cause that is sufficient to render official reliance reasonable.

This reading of *Leon* is supported by the *Leon* Court's application of its holding to the facts of the case. The Court noted:

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. . . . Officer Rombach's application for a warrant clearly was supported by much more than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." 468 U.S. at 926.

### Federal Cases Applying Leon

Additionally, a reading of *Leon* as not requiring a substantial basis for probable cause in order for the good faith exception to be applied is bolstered by decisions of the federal courts. The Tenth Circuit Court of Appeals, in *United States v. Danhauer*, 229 F.3d 1002, 1007 n.1 (10th Cir. 2000), noted the defendant

"argue[d] the good-faith exception does not apply . . . '[i]f the affidavit does not provide the magistrate with a *substantial basis* for determining the existence of probable cause.' While one of our sister circuits applies this language in its good-faith analysis, *see United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996), this court utilizes the 'substantial basis' language solely in the probable cause context. *See, e.g., United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998)."

The Tenth Circuit noted that this standard was consistent with the law set forth in *Leon*. 229 F.3d at 1006-07.

Subsequent to. *Danhauer*, the Fourth Circuit Court of Appeals has changed the approach which led to the Tenth Circuit's criticism. Now, the Fourth Circuit recognizes that *Leon* set out different standards for approaching the probable cause question on the one hand and the good faith exception question on the other. In

*United States v. Bynum,* 293 F.3d 192, 195 (4th Cir. 2002), the federal appellate court noted the district court had blurred the distinction:

"In holding that the third circumstance described by the *Leon* Court barred application of the good faith exception in this case, the district court misidentified when this circumstance occurs. Thus, the court stated that '[t]he good faith exception . . . does not apply' when the affidavit fails to provide 'a substantial basis for determining the existence of probable cause.' [Citation omitted.] 'Substantial basis' provides the measure for determination of whether probable cause exists in the first instance. [Citation omitted.] If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that the third circumstance prevents a finding of objective good faith only when an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' [Citation omitted.] This is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place."

The Sixth Circuit Court of Appeals also has adopted this understanding in *United States v. Carpenter,* 360 F.3d 591 (6th Cir. 2004), and again in *United States v. Laughton,* 409 F.3d 744, 752 (6th Cir. 2005). In *Laughton,* the Sixth Circuit stated:

"Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits. [Citations omitted.] Such an affidavit contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . .' [Citation omitted.] In our recent opinion in *Carpenter,* we adopted the Fourth Circuit's understanding of the 'so lacking' language, ruling that the standard by which an affidavit should be judged for purposes of the good faith exception " 'is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.' " *Carpenter,* 360 F.3d at 595 (quoting *United States v. Bynum,* 293 F.3d 192, 195 [4th Cir. 2002]). If good faith reliance were judged by the substantial basis standard, we observed, 'the exception would be devoid of substance.' [Citation omitted.]

"In the present case, the district court found that the deputy's application was 'inadequate to establish probable cause, but . . . [was not] so inadequate as to be deemed a bare bones affidavit,' based upon the fact that the deputy had taken the information to a magistrate and was 'able to furnish more than what has been deemed bare bones or a mere conclusion . . . .' " 409 F.3d 748-49.

In other words, the federal cases are in accord in applying the substantial basis test for probable cause only to the determination

of whether the warrant was valid; the test does not apply to the determination of whether the good faith exception applies. If the warrant is invalid, the probable cause test to be applied to see if the fruits of the search can nevertheless come under the good faith exception is whether the affidavit is so lacking in indicia of probable cause as to render official reliance unreasonable.

### Kansas' Construction of Leon

In at least three cases, this court has taken a different approach and applied the test of whether there was a substantial basis for the determination of probable cause to *both* the determination of the warrant's validity and the determination of whether the good faith exception applied.

Kansas first applied *Leon* in *State v. Doile*, 244 Kan. 493, 495, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990), where the defendant was arrested by the police in his automobile under suspicion that he was carrying drugs and driving while intoxicated. Police observed a partially burned marijuana cigarette on the console of defendant's car as it was parked in the lot of a club; when officers saw defendant leave, they followed and initiated a stop. After determining Doile did not have a valid license and was driving under the influence, he was arrested. In a search incident to arrest, the police found a mirror, a partially burned hand-rolled marijuana cigarette, and a bag containing a substance that was believed to be marijuana. After arriving at jail, the defendant's personal effects were searched and traces of cocaine were found in his billfold and on a straw he removed from the billfold and chewed during the book-in process. Based on an affidavit setting forth these facts and a disclosure of a prior conviction, the officers obtained a search warrant for his residence. In ruling the evidence should have been suppressed, this court held the warrant was invalid because "no probable cause existed" for its issuance. The court found there was no nexus between the information in the affidavit and the residence. *Doile*, 244 Kan. at 501-03.

The *Doile* court also held that the search could not be saved by the *Leon* good faith exception. In reaching this conclusion, the court noted:

"[A] strong theme running throughout *Leon* is that evidence seized under a search warrant subsequently held to be invalid is not to be suppressed absent some chicanery or wrongdoing by the police. *Leon* refers to this as the good faith exception to the exclusionary rule. . . . As *Leon* states: 'We . . . conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' [Citation omitted.]" 244 Kan. at 501-02.

Acknowledging that none of the four exceptions to *Leon* were applicable under the facts of the case, the *Doile* court stated:

"The affidavit contained no false or misleading statements. No pertinent information was withheld from the affidavit. There is no evidence the issuing judge 'wholly abandoned his . . . neutral and detached role.' The warrant was not lacking in specificity. There are no circumstances where it was unreasonable for the officer executing the warrant not to override the determination of probable cause found by the issuing district judge and refuse to execute the warrant. There simply is no bad faith or wrongdoing shown in the issuance or execution of the warrant." 244 Kan. at 502.

Nevertheless, the *Doile* court declined to apply the good faith exception to permit admission of the evidence seized at Doile's home, quoting a passage from *Leon* that "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' [Citation omitted.]" *Doile*, 244 Kan. at 502 (quoting *Leon*, 468 U.S. at 915). This passage from *Leon* is found in the *Leon* Court's discussion of the validity of the search warrant. The passage did not relate to the applicability of the good faith exception. In other words, the *Doile* court applied the statement in the wrong context. By reading the passage out of context, the *Doile* court, which had already determined the standard was not met and the warrant was not valid, found that the good faith exception did not apply.

In *State v. Probst*, 247 Kan. 196, 795 P.2d 393 (1990), this court again addressed the good faith exception after determining that the contested affidavit did not provide a substantial basis for issuing a search warrant for defendant's home. In that case, however, the court refused to apply the good faith exception because the issuing judge had "abandoned his judicial role," *Leon*'s second limitation

on the good faith exception. 247 Kan. at 205-06. The district judge who heard the motion to suppress the evidence was the same judge who approved the issuance of the warrant in the first place. When faced with the motion to suppress at trial, he acknowledged his error in issuing the warrant and granted the defendant's motion to suppress the evidence. The *Probst* court upheld his determination and did not reach the questions of the officers' subjective good faith or objectively reasonable reliance. 247 Kan. at 207.

The third occasion for applying *Leon* was *State v. Ratzlaff,* 255 Kan. 738, 877 P.2d 397 (1994). In *Ratzlaff,* a detective's affidavit indicated that a confidential informant had stated defendant was a drug dealer who, along with others, would receive delivery of drugs from a supplier on a particular date. The affidavit also related the outcome of police surveillance establishing that a supplier was in town that day and had met with other drug dealers named by the confidential informant, who, according to the informant, had ties to defendant.

After holding an evidentiary hearing on an eventual motion to suppress, however, the district court found that the affidavit: (1) omitted the fact that the defendant was out of town at the time the drug trafficking was ongoing and (2) deliberately implied that the drugs were delivered to this defendant when the information and investigation indicated otherwise. The district court concluded that these omissions, if included in the affidavit, " 'would have nullified any finding of probable cause that this defendant or his residence was involved in the drug transaction' "; that neither information from the informant nor the investigation by law enforcement the week preceding and up to the execution of the search warrant created reason to believe this defendant possessed drugs; that notwithstanding the investigation and surveillance by numerous law enforcement officers, " 'the single base accusation by the confidential informant that this defendant was involved in the large-scale drug traffic scheme remained uncorroborated.' " 255 Kan. at 740-41. The district court thus suppressed the evidence, holding that, based on the information available to the affiant, " ' "no reasonable well-trained officer should have relied upon the warrant" ' " and that the detective " ' "did not manifest objective good faith by relying on the warrant for this de-

fendant's residence based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence unreasonable." ' [Citation omitted.]" 255 Kan. at 741.

In an unpublished opinion, the Court of Appeals agreed that the warrant was invalid, but reversed; it concluded that the good faith exception applied because it was reasonable, based on the evidence *in* the affidavit, to conclude there was probable cause to issue a search warrant. Hence, a reasonable, well-trained officer might have relied on the warrant. See 255 Kan. at 742.

This court subsequently affirmed the district court's conclusion that the affidavit did not provide a substantial basis for the magistrate's finding of probable cause to believe drugs would be found at the defendant's residence. It also adopted the district court's finding that the detective intentionally omitted material information from the affidavit. 255 Kan. at 754-55.

Additionally, the court noted that, although the district court could have declined to apply the good faith exception based on the "deliberately misleading" aspects of the affidavit (*Leon's* first limitation to the good faith exception), the district court instead stated:

" 'This Court believes [the detective] did not approach the issuing magistrate with ill-intent and total deception. The lack of good faith is found only in [the detective's] desire to *unreasonably* extend the facts to this defendant's residence and to draw this defendant within the realm of probable cause by inference and innuendo when the facts and information dictated the contrary.' " (Emphasis added.) 255 Kan. at 755.

The district court had based its ultimate conclusion that the good faith exception did not apply on the finding that there was "so little indicia of probable cause contained in the warrant [affidavit] that it was entirely unreasonable for an officer to believe the warrant valid [*Leon's* fourth limitation.]" 255 Kan. at 755.

The *Ratzlaff* court stated that "[t]he question here [was] whether [the affiant-detective], as a well-trained police officer, reasonably should have known that his affidavit failed to establish probable cause." 255 Kan. at 754. However, the court did not answer this question explicitly; rather, the *Ratzlaff* opinion summarily concluded that "the search of defendant's residence [did] not fall within the good faith exception as expressed in *Leon,* and thus the

evidence obtained as a result of the search must be suppressed." 255 Kan. at 755.

The opinion did not include the questionable language from *Doile*; however, it did not properly frame the "question here." Under *Leon*, the question is not whether the officer reasonably should have known that the affidavit failed to establish probable cause. The United States Supreme Court specifically rejected imposing that burden. See *Leon*, 468 U.S. at 920-23. Rather, the issue is whether there is so little indicia of probable cause in the affidavit that reliance on it was objectively unreasonable.

This court had another opportunity to construe and apply *Leon* in *State v. Longbine*, 257 Kan. 713, 896 P.2d 367 (1995), the case relied on by the Court of Appeals in this case. The *Longbine* court perpetuated *Doile*'s imprecision when it quoted the same statement from *Leon*'s discussion of when a warrant will be determined to be invalid and attributed it to *Leon*'s holding concerning when the good faith exception will not apply. 257 Kan. at 721-22.

*Longbine* involved a police affidavit in support of a warrant application to search the defendant's residence. The affidavit described the interception of a number of phone calls between a suspected drug dealer and the defendant discussing drug deals and also stated that the suspected drug dealer was believed to store marijuana at the residences of his associates. Longbine was not named as one of these associates. Based on the affidavit, the magistrate issued a search warrant for 13 residences, one of which was Longbine's. In executing the warrant for his residence, officers seized drug paraphernalia and marijuana.

Longbine filed a motion to suppress the evidence seized from his residence, arguing that the affidavit for the search warrant failed to establish probable cause that contraband would be found in his residence. The district court granted the motion, finding that a reasonable officer would not have believed that the affidavit stated sufficient information to support probable cause for the issuance of the warrant to search the defendant's home. Upon consideration of the State's interlocutory appeal, the Court of Appeals reversed the district court's order and, apparently wanting to cover all bases, ruled that (1) there was a substantial basis stated in the affidavit to

conclude that probable cause existed and (2) the *Leon* good faith exception to the exclusionary rule applied.

In reviewing the validity of the search warrant on petition for review, this court held that the telephone calls merely gave the appearance that the defendant was part of the drug dealer's network and, without more information, the affidavit failed to state facts supporting probable cause to believe that drugs would be found at the defendant's residence. 257 Kan. at 719-20. On the question regarding the application of the *Leon* good faith exception, the court considered the defendant's argument that because the affidavit failed to establish sufficient probable cause to support the issuance of the warrant for his residence, the good faith exception should not apply and the evidence should be suppressed.

The *Longbine* court recognized that *Leon* laid out the four circumstances where the exclusionary rule still applies. Then, this court explained its understanding of the Supreme Court's reasoning in adopting the good faith exception in *Leon*:

> "The *Leon* Court then stated that reviewing courts will not apply the 'good faith exception' to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' [Citations omitted.] It concluded that ' "sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." ' 468 U.S. at 915." *Longbine*, 257 Kan. at 721.

Based on this construction of *Leon*, the *Longbine* court determined that the good faith exception does not apply to a warrant that fails to provide the magistrate with "a substantial basis for determining that probable cause existed that drugs would be found in defendant's residence." 257 Kan. at 721-22.

It is at this point that the analysis is flawed in the same manner as the *Doile* analysis. As previously noted, when the Court in *Leon* stated sufficient information must be presented to the magistrate to allow that official to determine probable cause, the Court was addressing the *initial* determination of whether the warrant was supported by probable cause. The Court was not addressing the good faith exception.

By requiring the use of a substantial basis test to review probable cause in both contexts—determining the validity of the search warrant and determining the applicability of the good faith exception to the exclusionary rule—the answer in the first context necessarily predetermines the answer in the second context. Simply put, *Doile* and *Longbine*, in applying the substantial basis test as a prerequisite for application of the good faith exception, predetermine the denial of the good faith exception despite the officers' lack of bad faith or misconduct. As the State argues, this renders the *Leon* good faith exception unattainable in Kansas.

The State is not alone in its criticism of *Longbine*'s construction of the *Leon* good faith exception. In *State v. Jackson*, 30 Kan. App. 2d 288, 41 P.3d 871 (2002), the Court of Appeals recognized the four circumstances requiring exclusion as provided in *Leon*. But none of the four circumstances applied in *Jackson*. The Court of Appeals observed that the affidavit in support of the search warrant contained no false or misleading statements. No pertinent information was withheld from the affidavit, nor was the warrant lacking in specificity. The panel further noted that there was no evidence that the issuing judge wholly abandoned his neutral and detached role and no circumstances "where it was unreasonable for the officer executing the warrant not to override the determination of probable cause found by the issuing judge and refuse to execute the warrant." 30 Kan. App. 2d at 297. In sum, there simply was no bad faith or wrongdoing shown in the issuance or execution of the warrant.

The *Jackson* panel stated: "This determination would normally end the inquiry and the evidence would be admissible under the good faith exception." 30 Kan. App. 2d at 297 (citing *Doile*, 244 Kan. at 502). Because of the holdings in *Doile* and *Longbine*, however, requiring minimum probable cause in order to apply the good faith exception, the Court of Appeals was compelled to follow Kansas Supreme Court precedent. The panel stated: "Although *Leon* may not have established a minimum probable cause requirement, it is clear that our Supreme Court has established such a requirement." 30 Kan. App. 2d at 299; see also, *e.g.*, *State v. Malm*, 37 Kan. App. 2d 532, 548, 154 P.3d 1154 (2007) ("The court's rea-

soning in *Doile* is somewhat curious because the *Leon* good faith exception is only triggered in cases where a court subsequently determines that the search warrant affidavit fails to establish a substantial basis for probable cause. This is why we have the *Leon* good faith exception in the first place."); *State v. Hemme,* 15 Kan. App. 2d 198, 204, 806 P.2d 472, *rev. denied* 248 Kan. 998, *cert. denied* 502 U.S. 865 (1991) (noting that the *Doile* court added a probable cause requirement to *Leon's* good faith exception by quoting "some preliminary probable cause language from earlier in the *Leon* opinion"). For a general overview, see Comment, *The Good Faith Exception to the Exclusionary Rule: An Analysis of Kansas Law,* 41 Kan. L. Rev. 95 (Crim. Proc. ed. 1993) (Kansas Supreme Court has incorrectly added an additional "minimum probable cause" requirement not found in *Leon,* creating confusion and making the scope of the exclusionary rule unclear.).

### Application of Leon

We agree with these authorities and conclude that, by refusing to apply the good faith exception in all cases where the search warrant was based on an affidavit that failed to provide a substantial basis for determining the existence of probable cause, the *Doile* and *Longbine* courts misconstrued *Leon.* It is incorrect to apply the substantial basis test to both the determination of whether the warrant was valid and to the determination of whether the good faith exception applied. This automatic nullification of *Leon* does not appear to have been intentional; indeed, the cases rely on *Leon.* Nonetheless, it was effective—and error.

We must then ask, would we depart purposefully from *Leon?* Although some other states have declined to follow *Leon* on state law grounds, Kansas has never expressed such grounds or an intent to invoke them to do so. See, *e.g., State Patrol v. State, Dept. of Public Safety,* 437 N.W.2d 670, 676 (Minn. App. 1989) (stating that Minnesota has not adopted good faith exception); *State v. Novembrino,* 105 N.J. 95, 157-58, 519 A.2d 820 (1987) (exclusionary rule, unmodified by good faith exception, is integral part of state constitutional guarantee that search warrants will not be issued without probable cause); *State v. Oakes,* 157 Vt. 171, 598 A.2d 119

(1991) (state exclusionary rule not limited by *Leon* good faith exception).

In past cases, we have stated that the scope of § 15 of the Kansas Constitution Bill of Rights "is identical" or "is usually" identical to the scope of the Fourth Amendment to the United States Constitution. Compare *State v. LeFort*, 248 Kan. 332, 334, 806 P.2d 986 (1991) ("is identical"), and *State v. Deskins*, 234 Kan. 529, Syl. ¶ 1, 673 P.2d 1174 (1983) (scope "is identical" in "any particular factual situation"), with *State v. Lambert*, 238 Kan. 444, 446, 710 P.2d 693 (1985) ("is usually considered to be identical"), and *State v. Fortune*, 236 Kan. 248, Syl. ¶ 1, 689 P.2d 1196 (1984) (same). Although this court has recognized that it could extend state constitutional protections of § 15 beyond the federal guarantees provided by the Fourth Amendment, it has declined to do so. See *State v. Schultz,* 252 Kan. 819, 824, 850 P.2d 818 (1993); Comment, *Interpreting the State Constitution: A Survey and Assessment of Current Methodology*, 35 Kan. L. Rev. 593, 618 n.151 (1987).

The only reason we would deviate from this practice and impose a more restrictive reading on the good faith exception would be because the doctrine of stare decisis would constrain our departure from *Longbine* and *Doile*. However, as the United States Supreme Court has stated repeatedly, stare decisis, which is at its weakest in the field of constitutional law where legislative bodies cannot correct our mistakes, should not constrain a court from disapproving its own holdings "when governing decisions are unworkable or are badly reasoned." *Payne v. Tennessee*, 501 U.S. 808, 827-28, 115 L. Ed. 2d 720, 111 S. Ct. 2597, *reh. denied* 501 U.S. 1277 (1991). Especially since it does not appear that this court intentionally deviated from the *Leon* holding, it would not be appropriate to blindly adhere to our precedent in *Doile* and *Longbine* in light of those cases' misapplication of the United States Supreme Court decision.

We, therefore, conclude that the holding in *Leon* applies in Kansas without modification: the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be in-

valid, except where: (1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized.

The *Leon* good faith exception applies when an affidavit does not supply a substantial basis for the determination of probable cause but does provide some indicia of probable cause sufficient to render official reliance reasonable. We disapprove any language in *State v. Longbine*, 257 Kan. 713, 721-22, 896 P.2d 367 (1995), *disapproved on other grounds by State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006), *State v. Ratzlaff*, 255 Kan. 738, 754-55, 877 P.2d 397 (1994), and *State v. Doile*, 244 Kan. 493, 495, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990), applying the test of whether there is a substantial basis for the determination of probable cause to the determination of whether the good faith exception to the Fourth Amendment exclusionary rule applies.

Finally, we must determine whether the good faith exception applies in this case. When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. *State v. Fisher*, 283 Kan. 272, 280, 154 P.3d 455 (2007).

Application of the principles we have enunciated today to the allegations and record before us on interlocutory appeal leads to the conclusion that the good faith exception applies. Although the trial court found that the affidavit failed to provide the magistrate with a substantial basis to find probable cause for issuance of a warrant to search Hoeck's residence, there were no findings and no allegations that any of the four circumstances enunciated in *Leon* for the suppression of the evidence exists. There was no evidence that the magistrate was deliberately misled by false information or that the magistrate completely abandoned his neutral and detached role. And there were no circumstances where it was

reasonable for the officers executing the warrant to override the probable cause determination found by the magistrate and refuse to execute the warrant; this is not a circumstance where there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid. Nor was the warrant so lacking in specificity that the officers could not determine the place of the search or the items to be seized. In short, there was no bad faith or wrongdoing shown in the issuance or execution of the warrant and, thus, no need to deter any police misconduct.

Under the reasoning in *Leon*, the good faith exception to the exclusionary rule applies to the facts of this case, at least based upon the allegations and evidence in the record of this interlocutory appeal.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

JOHNSON, J., not participating.
LARSON, S.J., assigned.