(323 P.3d 188)
No. 110,191

STATE OF KANSAS, *Appellant*, v. TIMOTHY DOUGLAS MALONE, *Appellee*.

Opinion filed April 18, 2014.

*Shawn E. Minihan* and *Steven Obermeier*, assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Paul D. Cramm*, of Overland Park, for appellee.

Before LEBEN, P.J., GREEN and HILL, JJ.

HILL, J.: This is an interlocutory appeal of a district court ruling suppressing contraband found in a trash bag left in front of a house. The district court held that since there was no evidence connecting the contraband with the house where the defendant was living, there was no probable cause to issue a search warrant, and the court thus suppressed the evidence. Because we agree that there was no probable cause for issuing this search warrant, we hold the court's ruling on that point is correct. In its second attack on the court's ruling, the State contends the good-faith exception to the exclusionary rule compels the admission of this evidence. Because the affidavit in this case was so bare-bones, it lacked any indicia of probable cause, and any official belief that probable cause to search existed was unreasonable. We hold the trial court was correct when it refused to apply the good-faith exception.

*A purchase of fertilizer and soil conditioner started this investigation.*

At a meeting hosted by the Missouri State Highway Patrol regarding possible marijuana "grow houses" in Olathe, a Missouri Sergeant, Jim Wingo, told Olathe Detective Nicholas Stein that an unidentified male had been seen purchasing perlite soil conditioner and liquid fertilizer from the Green Circle Garden Center on February 8, 2011. The man was then seen driving a car registered to Mai Lin Malone, whose address was a residence on South Troost Street in Olathe.

Detective Stein went to the Troost address on April 7, 2011, and recovered trash placed in a plastic garbage can sitting at the curb. Stein said that when he sorted through the trash, he found some plants suspected to be marijuana, a glass pipe containing suspected marijuana residue, an empty jug of General Hydroponics, and other items consistent with marijuana cultivation. Stein also found mail addressed to Melissa Sayer, at the same residence on South Troost Street. The mail was not found in the same bag as the contraband. Stein said that water billing records noted that Mai Lin Malone was the resident at the residence on South Troost Street.

Stein used this information to obtain a search warrant. The court concluded that the officer had probable cause to believe marijuana and various items related to the cultivation, use, packaging, and sale of marijuana would be found at the residence and issued a search warrant.

Stein and other officers executed the search warrant on April 8, 2011. They discovered marijuana plants, drug paraphernalia, firearms, and tattooing equipment. The State charged Malone with the crimes of cultivation of marijuana, two counts of possession of drug paraphernalia, a drug tax stamp violation, and unlicensed tattooing.

Malone moved to suppress all evidence seized during the search. He claimed Stein's affidavit failed to establish probable cause to search because the mail bearing Sayer's name—the only evidence giving an indication of the source of the trash—was not found in

the same bag as the contraband. Malone argued that because the search warrant was unsupported by probable cause, all evidence obtained during the search—including the tattooing evidence—was "fruit of the poisonous tree."

In opposition to the motion, the State argued that the combination of finding the trash directly in front of the Troost residence and Stein's information regarding the prior garden center purchase established probable cause. The State also claimed recovery of the tattooing evidence was permissible because it was in plain view when they were searching.

The district court agreed with Malone and granted his motion to suppress all evidence obtained during the search. The court explained that under Kansas law, an affidavit must specify a link between trash collected during a trash pull and the residence the police want to search. The court said that here, where the contraband was found in one trash bag and any evidence showing the source of the trash was found in a separate bag, there was not a sufficient link between the contraband and the residence. The court found Stein's information about the garden center purchase to be insufficient as well, noting the link between Malone and this purchase was "tenuous," as there was no evidence to establish Malone was the person who made the purchase.

In a motion for reconsideration, the State brought up for the first time the good-faith exception to the exclusionary rule. In its resulting holding, the court first observed it need not consider the State's argument because the State could have presented this argument prior to the court's ruling on the suppression motion. Nevertheless, the court addressed the substance of the State's argument and determined the good-faith exception did not apply here because it was not reasonable for the officers to act on the warrant—since the indicia of residency was not found in the same bag as the contraband. The court noted our Supreme Court has made it clear that an affidavit must establish a link between contraband found in the trash and a residence subject to a search, this is not a recent development in the law, and police officers must have a reasonable knowledge of what the law prohibits.

The State brings this appeal, arguing the district court erred in determining Stein's affidavit was insufficient to support a finding of probable cause to search the Troost residence. In addition, the State argues the good-faith exception to the exclusionary rule should have applied here because law enforcement officers reasonably relied on the search warrant. We will examine the two issues in that order.

*Our rules of review.*

The standards for issuing a search warrant are well known. When considering whether to issue a search warrant, a judge is required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Hicks*, 282 Kan. 599, Syl. ¶ 1, 147 P.3d 1076 (2006).

In turn, when we review the issuance of a search warrant on appeal, we apply a deferential standard of review to see if the affidavit provides a substantial basis to support the issuance of the warrant:

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." *Hicks*, 282 Kan. 599, Syl. ¶ 2.

This deferential standard of review is appropriate because such a policy encourages police officers to first seek a warrant before making a search. A more rigorous standard of review would discourage such behavior. *Hicks*, 282 Kan. at 613. As always, the State bears the burden of proving the lawfulness of a search and seizure at a

hearing on a motion to suppress. *State v. Vandiver*, 257 Kan. 53, 57-58, 891 P.2d 350 (1995).

For our part, when we are asked to determine the sufficiency of a search warrant affidavit, we look at the affidavit from the four corners of the document. *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154, *rev. denied* 284 Kan. 949 (2007). Obviously, the ultimate determination of the suppression of evidence is a question of law, requiring independent appellate determination. *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998). The question that is before us is whether Detective Stein's affidavit provided a substantial basis for the judge's determination that there was a fair probability that evidence would be found at the Troost residence. *Hicks*, 282 Kan. 599, Syl. ¶ 2.

*There was no probable cause to issue this search warrant.*

In ruling on the motion to suppress, the district court found fault with both the trash pull and the garden center purchase information. First, the court determined that the indicia of residency needed to have been in the same bag as the contraband, and the court found Detective Stein's conclusion that the contraband belonged to the Troost residence to be unsupported by any facts. Second, the court concluded the link between Malone and the garden center purchase was "tenuous," as there was no evidence establishing Malone as the person who made the purchase.

We agree with the district court's conclusion on this point. When it comes to trash pulls, if a search warrant is to be issued, the general rule requires some evidence connecting the drug evidence discovered in a trash bag and the residence to be searched. For example, in *Hicks*, 282 Kan. at 616-17, the court found evidence obtained from two trash pulls insufficient to support probable cause where:

- The officer's affidavit stated without explanation that the bags were seized from the "normal place" where Hicks placed his trash;
- the affidavit did not state whether the bags contained indicia of residency; and

- the affidavit did not indicate whether anyone saw Hicks place the bags in the trash area.

The *Hicks* court noted the requirement of establishing a sufficient connection between the trash and the residence has been consistently applied by this court as well. 282 Kan. at 617.

In *State v. Malm,* 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007), the panel held that in order to obtain a warrant to search a suspect's residence, there must be some definite link between the illegal or suspicious activity described in an affidavit and the suspect's residence. *That link must be sufficient to establish a fair probability that contraband or evidence of a crime will be found in the residence.* This does not necessarily mean the evidence linking the contraband with the residence to be searched must be found in the same trash bag. The linkage can be established by other evidence such as surveilance reports.

Here, the police found information concerning the occupancy of the residence and the contraband in separate trash bags, albeit from the same trash pull. There was no evidence indicating who placed the bags at curb side. Two unpublished opinions from this court, one finding no probable cause and one finding probable cause, offer guidance on this point.

In *State v. Bennett,* No. 92,997, 2005 WL 1429919 (Kan. App. 2005) (unpublished opinion), a panel of this court held an affidavit failed to establish the requisite link between the trash and the residences at issue. The panel observed:

. "Here, the affidavits in question do not state that the police actually observed the defendants take the trash from their residences and place it out for collection. More significantly, the affidavits indicated that Grayson collected multiple trash bags from outside each residence. *However, all four affidavits failed to mention whether the indices of residency were found in the same trash bag as the contraband. This is important because the trash outside each residence was accessible to the public where anyone could have passed by and deposited contraband."* (Emphasis added.) 2005 WL 1429919, at *5.

The facts in *Bennett* are similar to the facts here.

In contrast, this court upheld a search in a case where the indicia of residency—a prescription bag and work schedules bearing the defendant's name—supported a finding of probable cause because .

the identifying information was found *in the same trash bag* as the one containing contraband. This evidence provided the link between the contraband and the residence the police wanted to search. See *State v. Dickerson*, No. 90,654, 2004 WL 1489048, at *1 (Kan. App. 2004) (unpublished opinion). The court rejected Dickerson's argument that the contraband could have come from another person in his duplex, noting the contraband was found "in an individual trash bag inside the container which also contained" the indicia of residency. 2004 WL 1489048, at *3.

Thus, in *Bennett*, the State could not produce evidence that established a link between the residence and the contraband, and the evidence from the search was suppressed. In *Dickerson*, the evidence that linked the residence with the contraband was found in the same trash bag, and the search was upheld. These holdings make sense. Obviously, since anyone can throw a bag of trash containing contraband into a plastic barrel sitting at curbside, the question becomes what ties the contraband with the residence.

This case involved only one trash pull. There was no surveillance evidence connecting the trash bags with the residence or the people who lived in that residence. In short, there was no evidence of illegal activity in the house.

In our view, there is no connection between the residence and the contraband that is sufficient to support the issuance of a search warrant. Not only was the mail found separately from the contraband, but the mail was not addressed to Mai Lin—the only person shown to have a connection to the garden center purchase and to Malone. Anyone could have passed by the Troost residence and thrown the bag containing contraband into the trash can. Stein's affidavit did not indicate that anyone saw Malone or another resident of the Troost house place the bags in the can, and there is no indication that more than one trash pull was conducted during this investigation.

Stein's affidavit simply indicated the trash was placed near the curb at the Troost residence. Kansas courts have consistently ruled that such a low level of information is insufficient to support probable cause. For example, in *Hicks*, 282 Kan. at 616-17, the Supreme Court held there was not a substantial basis for probable cause

where an affidavit merely indicated the bags were seized from the "normal place" where defendant placed his trash for pickup and the affidavit did not state whether the defendant was seen placing the trash in its location. In *State v. Droge*, No. 92,501, 2005 WL 475264, at * 2, 5 (Kan. App. 2005) (unpublished opinion), a panel of this court held that an affidavit was insufficient to support probable cause where the officer indicated he obtained the defendant's trash from a pickup location but the officer did not state that anyone observed the defendant place the trash there. Nor did the officer report any other facts that would support a conclusion the trash belonged to the defendant.

Additionally, two other items are troubling at this point. First, Stein's affidavit provided no information regarding the identity of the person who allegedly made the garden center purchases—other than it was a male driving a vehicle registered to a person listed as residing at the Troost residence. No physical description of the buyer was given that established any similarity between the buyer and Malone. Also, the affidavit provided no explanation about why a single purchase of soil conditioner and liquid fertilizer might be indicative of marijuana cultivation at this residence.

The second troubling point is the amount of time between the purchases at the garden store on February 8, 2011, and the request for a warrant on April 7, 2011. This gap significantly weakened any possible link between the soil conditioner and liquid fertilizer purchase and the contraband found 2 months later. One can reasonably ask what did the garden store purchases made 2 months earlier have to do with contraband found at curbside 2 months later? We see no link in the affidavit that provides a substantial basis for the issuance of the warrant.

The district court did not err in holding there was no substantial basis to support a finding of probable cause to issue a search warrant. Thus, the court correctly suppressed the evidence obtained during the search.

*Is the good-faith exception applicable?*

When law enforcement officers conduct an unreasonable search in violation of an individual's Fourth Amendment rights, a court's

remedy for such an illegal search is to exclude any resulting evidence in the prosecution of that individual. *State v. Althaus*, 49 Kan. App. 2d 210, 219, 305 P.3d 716 (2013). There are exceptions to the rule.

The Fourth Amendment to the United States Constitution established a policy, and the United States Supreme Court has expressed a preference that a neutral, objective magistrate should be involved in the decision to allow police to search a residence. In furtherance of that policy, the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 908-09, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), held the exclusionary rule should not be applied in cases where law enforcement officers relied in good faith on a signed warrant in conducting a search. Employing a "costs-benefits" analysis, the Supreme Court concluded, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." 468 U.S. at 922.

The Kansas Supreme Court has approved application of the good-faith exception to the exclusionary rule in *State v. Hoeck*, 284 Kan. 441, Syl. ¶¶ 1, 2, 463, 163 P.3d 252 (2007). Prior to *Hoeck*, the Kansas Supreme Court had held that in Kansas, the good-faith exception created by *Leon* does not apply to a warrant that fails to provide the magistrate with "a substantial basis for determining that probable cause existed that drugs would be found in defendant's residence." See *State v. Longbine*, 257 Kan. 713, 721-22, 896 P.2d 367 (1995), *disapproved on other grounds by State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006). The court's view has changed. Rejecting all of its prior rulings concerning *Leon*, the court held:

"We therefore conclude that the holding in *Leon* applies in Kansas without modification: The Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid, except where: (1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not

determine the place to be searched or the items to be seized." *Hoeck*, 284 Kan. at 463-64.

Here, the district court concluded this case fell into the third category discussed in *Hoeck*, so the good-faith exception did not apply. Specifically, the court concluded the officers in this case did not reasonably act on the warrant because they could "easily" have understood the indicia of residency found in the trash did not provide a sufficient link to support probable cause, as it was found in a separate bag from the contraband. The question of whether this court has correctly construed the *Leon* good-faith exception is one of law over which appellate courts have unlimited review. *Hoeck*, 284 Kan. at 447-48.

The district court noted that in *Hicks*, the Kansas Supreme Court made it clear that an affidavit must establish a link between the residence and the contraband found in a trash can. See 282 Kan. at 617. The district court said officers must have a reasonable knowledge of what the law prohibits and went on to point out that this area of the law is not a recent development. The court noted the State failed to point to any law upon which the affiant could reasonably have relied when seeking the search warrant.

We question whether the good-faith exception can apply under these facts. Detective Stein, the affiant who obtained this search warrant, along with other officers, executed the search. Stein knew he had no evidence linking the contraband with the residence. In the affidavit, Stein acknowledged that he found the contraband in a different bag than the bag with the indicia of residency. Since Stein offered no other information that would link the trash bags to the Troost residence, we conclude he knew of no other evidence linking the two. For example, Stein did not say he saw Malone or another resident of the Troost house place the bags in the can. Stein did not indicate he conducted multiple trash pulls finding contraband each time. Stein did not indicate he had been conducting surveillance of the Troost house. Stein simply indicated that the trash bags were found at the curb near the Troost residence. If he had any additional knowledge he certainly did not share it with the judge who issued the search warrant.

Application of the good-faith exception presumes the law enforcement officer involved in a particular case has a reasonable knowledge of what the law prohibits. " 'Grounding the modification [of the exclusionary rule] in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment. [Citation omitted.]' " *Leon*, 468 U.S. at 919 n.20; see *Althaus*, 49 Kan. App. 2d at 222.

A law enforcement officer should understand the broad precepts implicated in a Fourth Amendment search and should recognize an obviously deficient warrant. Good faith is an objective standard measured by how a reasonable law enforcement officer would view the circumstances. Thus, an officer poorly versed in basic search and seizure requirements may not rely on the good-faith exception solely because he or she subjectively believes the judge acted properly in signing a warrant. *Althaus*, 49 Kan. App. 2d at 222.

Stein claimed in his affidavit that he had previously been involved in marijuana investigations and that he was a certified law enforcement officer of over 5 years of experience and had attended many training sessions for narcotics crimes investigators. Employing an objective standard of review here, we agree with the district court. Detective Stein was required to act in accord with the Fourth Amendment and possess a reasonable knowledge of the law. Indeed, the requirement of having a connection between the contraband found in trash left at curbside where anyone could deposit it and the residence to be searched is not a new requirement.

When put in plain terms, it becomes clear that there was no probable cause here. Three suspected marijuana plants and a glass pipe found in a garbage bag thrown into a trash can at curbside in front of a house, without more, does not mean that the contraband came from that house. Any passerby could have deposited that contraband into that trash can. Indeed, this affidavit for a search warrant was one of the "bare-bones" affidavits referred to by the Kansas Supreme Court in *Hoeck* that cannot support the application of the good-faith exception. 284 Kan. at 452.

In addition, Stein's information about the garden center purchase lends scant support to a finding of probable cause. Stein provided no information regarding the identity of the person who allegedly made the garden center purchase, other than it was a male driving a vehicle registered to a person listed as residing at the Troost residence. The affidavit provided no explanation why a single purchase of soil conditioner and liquid fertilizer might be indicative of marijuana cultivation, especially with the significant passage of time between the garden center purchase and the trash pull.

We emphasize that there is nothing in the record that suggests Stein intentionally misled or lied to the judge who issued the search warrant. Additionally, we are not persuaded by the State's argument that comments made by the district judge during the hearing that he would have believed the probable cause requirement was met. The district judge acknowledged at the hearing that he had only "glanced" at the authorities on the issue and that he needed to "revisit" the issue "in writing." The district judge's initial passing remarks on the issue are irrelevant to his final decision.

We agree with the district court that under the third *Leon* exception, there was so little indicia of probable cause contained in the affidavit here that it was entirely unreasonable for Stein to believe the search warrant was valid. We hold the district court did not err in refusing to apply the good-faith exception based on its finding that the officers in this case acted unreasonably.

Finally, the district court made no specific ruling about the tattooing evidence but simply suppressed all evidence obtained during the search. Because the State has failed to brief the issue on appeal, we must deem the issue abandoned and uphold the suppression of all evidence obtained during the search, including the tattooing evidence. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

Affirmed.