IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,362

STATE OF KANSAS,
*Appellant*,

v.

JERAMY A. ZWICKL,
*Appellee.*

SYLLABUS BY THE COURT

1.

Neither the Fourth Amendment to the United States Constitution nor Section 15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective protections. Instead, a judicially created exclusionary rule exists to prevent the use of unconstitutionally obtained evidence.

2.

The exclusionary rule operates to protect Fourth Amendment rights generally through its deterrent effect, rather than serving as a personal constitutional right of the person subjected to an illegal search. To date, we have relied on the United States Supreme Court's Fourth Amendment jurisprudence when applying Section 15 of the Kansas Constitution Bill of Rights.

3.

The exclusionary rule should not be applied to bar use of evidence obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate if that warrant is later determined to be invalid, except when:  (a) the magistrate issuing the warrant was deliberately misled by false

1

information; (b) the magistrate wholly abandoned the detached or neutral role of a judge; (c) there was so little indicia of probable cause contained in the affidavit used to support the warrant application that it was entirely unreasonable for officers to believe the warrant was valid; or (d) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized.

4.

An appellate court uses a bifurcated standard of review to consider a district court's decision to apply the exclusionary rule to a situation in which law enforcement officers relied in good faith on a judicially issued search warrant. The factual underpinnings for the district court's ruling will be reviewed under a substantial competent evidence standard, while the ultimate legal conclusion to be drawn from those facts will be examined de novo.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 12, 2016. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed May 5, 2017. Judgment of the Court of Appeals reversing the district court and remanding is affirmed. Judgment of the district court is reversed and remanded.

*Keith E. Schroeder*, district attorney*, argued the cause, and *Thomas R. Stanton*, deputy district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, argued the cause, and *Charles A. O'Hara*, of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  When law enforcement executes a search warrant that is later found to lack probable cause, a court will not apply the exclusionary rule to bar use of the

2

evidence obtained during that search unless the case falls within one of four exceptions. See *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007). One such exception is when the warrant was issued based on a supporting affidavit containing so little indicia of probable cause that it would be entirely unreasonable for an officer acting in objective good faith to believe the warrant was valid. 284 Kan. at 464. In this interlocutory appeal, the Court of Appeals disagreed with the district court about that exception's applicability. This impacts the suppression of three pounds of marijuana and other drug evidence. The appellate panel held the affidavit supporting the warrant contained sufficient indicia of probable cause and reversed the district court's contrary conclusion. See *State v. Zwickl*, No. 113,362, 2016 WL 556292, at *7 (Kan. App. 2016) (unpublished opinion).

We affirm the panel's decision and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Based on information from two confidential informants, Reno County Sheriff deputies began investigating Jeramy Zwickl's suspected drug-related activities. The deputies conducted two trash pulls, secured a warrant to place a GPS device on Zwickl's 2006 Ford Mustang, and with the aid of that device followed Zwickl during his trip to Colorado with a friend.

Based on the information obtained from these investigatory activities, a deputy prepared an affidavit to support an application for a warrant to search Zwickl's Mustang. It is necessary to copiously recite the affidavit's pertinent parts:

> "[¶ 1] I am a Sheriff's Deputy employed by the Reno County Sheriff's Office and
> assigned to the Reno County Drug Enforcement Unit, hereinafter D.E.U. I have training

3

and experience in the investigation of cases involving the manufacturing, distribution and possession of controlled substances . . . .

"[¶ 2] In October 2011, the D.E.U. received information from a confidential informant, (hereinafter 'C.I. # 1') who was seeking leniency on pending criminal charges. C.I. # 1 has provided information in the past that has proven to be reliable and credible. C.I. # 1 stated that Jeramy Zwickl, who resides at 719 E Ave C, Hutchinson, Reno County, Kansas, was selling a lot of 'kind bud' and was going to Colorado to pick it up. I know from my training and experience that 'kind bud' is a term used for high-grade marijuana normally raised as medical marijuana and sold illegally.

"[¶ 3] On August 14, 2012 the D.E.U. received information from a confidential informant, (hereinafter 'C.I. # 2') who was seeking leniency on pending criminal charges. C.I. # 2 has provided information that the D.E.U. has not yet verified. C.I. # 2 stated that Jeramy Zwickl on East Avenue C in Hutchinson, Reno County, Kansas, on the south side of the street, drives to Colorado to pick up marijuana a couple of times a month. C.I. # 2 stated they [*sic*] have purchased marijuana from Jeramy on numerous occasions in the past. C.I. # 2 described the house as blue-gray in color, and has a Jeep in the driveway with big mud tires. I later checked local law enforcement in-house records, which show that Jeramy Zwickl lists his address as 719 E Ave C. Members of the D.E.U. later went by the address 719 E Ave C and verified the color of the house to be light blue in color and a Jeep as described above parked in the driveway.

"[¶ 4] Later on August 14, 2012, during surveillance, I observed a silver Ford Mustang with Kansas registration tag number 801DCS, which is registered to Jeramy Zwickl and Melissa Hamby, parked in the driveway at 719 E Ave C, Hutchinson, Reno County, Kansas.

"[¶ 5] On Thursday, August 16, 2012, I contacted an employee from Stutzman's Refuse Service prior to the trash being collected for 719 East Ave C. The normal trash collection day for this residence is on Thursday. The trash cart for the residence was placed at the curb for pick up. I confirmed that the trash bin on the truck was clear and observed the trash being collected from 719 East Avenue C. I then followed the

4

Stutzman's Refuse truck to another location and collected the trash from the bin of the truck. Located in the trash was a credit card receipt for Domino's Pizza in the Denver, Colorado area; three hotel receipts all with the name Melissa Hamby, one hotel receipt was from 06-30-2012 for a one night stay in Fort Collins, Colorado. Another motel receipt was on 07-07-2012 for a one night stay at Motel 6 in Wheatridge, Colorado. Also located in the trash was a cell phone bill and Westar Energy bill with Jeramy Zwickl's name on it. Also located in the trash was a used clear plastic baggie that had a knot tied in the middle with the side torn out of it. There were also three small marijuana stems, one which was field-tested and resulted positive for marijuana.

"[¶ 6] On August 17, 2012, I applied for a search warrant/order for placement of a GPS device on the silver Ford Mustang bearing Kansas tag 801DCS registered to Jeramy Zwickl and Melissa Hamby . . . . The search warrant/order was issued by Reno County District Court Judge Joseph McCarville on that date. I subsequently placed a GPS device on the vehicle pursuant to that search warrant/order.

"[¶ 7] On Thursday, August 23, 2012, I collected the trash from 719 East Avenue C, Hutchinson, Reno County, Kansas in the same manner as described above. Located in the trash was mail addressed to Melissa Hamby at 719 East Avenue C, a pharmacy receipt for Kaleb Zwickl and used rubber gloves.

"[¶ 8] On Friday, August 24, 2012 at approximately 5:00 pm (CDT), the silver Ford Mustang with Kansas registration tag number 801DCS left Hutchinson, Kansas. I followed the vehicle, and conducted surveillance with the aid of the GPS device. The Mustang traveled on K96 Highway all the way to Limon, Colorado, where it got onto Interstate 70 traveling westbound. In the early morning hours of August 25, 2012, the vehicle proceeded directly to a Motel 6 located at 9920 West 49th Avenue, Wheatridge, Colorado. This is the same motel as listed on the receipt dated 07-07-2012 which had been collected from the trash on August 16, 2012. I was able to visually confirm Jeramy Zwickl and Melissa Hamby as they were checking into the motel. Zwickl and Hamby were the only occupants of the Mustang.

5

"[¶ 9] On Saturday, August 25, 2012, at approximately 9:25 am (MDT), I observed as Jeramy and Melissa left the Motel 6 in the Mustang . . . . According to the GPS, the Mustang proceeded to a location on Pitts Place in the Arapaho National Forest in Blackhawk, Colorado, staying for approximately 6 minutes. . . . [T]he vehicle then proceeded to Nederland, Colorado, where I observed Zwickl and Hamby have lunch. D.E.U. Officers walked around Nederland, Colorado, while Jeramy and Melissa were eating, and observed several people smoking marijuana in the streets. . . .

"[¶ 10] . . . [T]he GPS . . . indicate[s] that the vehicle remained at the Pitts Place location the rest of the day and night, and into Sunday, August 26, 2012.

"[¶ 11] Based on my training and experience, I know it is common for individuals packaging illegal controlled substances to place the substance into the corner of a baggie, tie off the excess baggie and then either cut or tear away the excess. . . . The portion of a plastic baggie found in the trash on August 16 is consistent with this type of packaging.

"[¶ 12: providing the affiant/officer's opinion concerning the above ¶¶] Based on my training and experience, I know vehicles are often used for the pickup and delivery of controlled substances . . . . I also know that Colorado is a state in which medical marijuana is sold . . . .

"[¶ 13] I believe the information contained within this Affidavit establishes probable cause to believe that Jeramy Zwickl and Melissa Hamby are involved in the distribution and use of controlled substances and that evidence of such crime will be found at, in, or upon the . . . Mustang . . . .

"[¶ 14] . . . I respectfully request this Court issue a search warrant to search the . . . Mustang . . . to search for and to seize the following items: marijuana or any other controlled substance and other evidence related [thereto as described]."

6

The judge issued the warrant and it was executed the following day. Officers seized three pounds of marijuana. Based on this, investigators then obtained a warrant to search Zwickl's residence, where they found drug paraphernalia, mushrooms, more marijuana, and cultivating equipment.

Zwickl was charged with possession of marijuana with intent to sell and other related offenses. He moved to suppress the evidence found in his vehicle and his home, arguing the affidavit supporting the vehicle search did not provide the necessary probable cause for the magistrate to issue the warrant, which in turn infected the home search. The district court agreed and suppressed the evidence based on its conclusion that it was entirely unreasonable for an officer to believe the warrant to search the Mustang was valid. The court ruled,

> "The State argues the good faith doctrine saves this search. Good faith does not save a search based on a warrant which bears so little indicia of probable cause that it is entirely unreasonable for an officer to believe the warrant is valid. Of note here is the statement in the affidavit that officers observed several people smoking marijuana in the streets in Nederland, Colorado, where defendant and his companion ate lunch. This statement lends nothing to the drug investigation against defendant. Defendant did not associate with the observed 'smokers' nor was there any indication defendant supplied their marijuana. Including this statement suggests the officers knew or should have known their information was lacking.

> "The court cannot find the good faith exception applies. The motion to suppress the evidence seized from the Ford Mustang is granted."

The State filed this interlocutory appeal. The Court of Appeals reversed, limiting its analysis to whether the good-faith doctrine should apply. The panel did not address whether the district court was correct in ruling the warrant was not supported by probable cause. See *Zwickl*, 2016 WL 556292, at *3.

7

The panel believed a reasonably well-trained law enforcement officer would look at the affidavit as a whole and find these facts significant: (1) the two confidential informants' statements—one alleging having purchased marijuana from Zwickl, the other alleging Zwickl was selling marijuana, and both alleging Zwickl went to Colorado to purchase marijuana using the Ford Mustang registered to Zwickl; (2) evidence obtained from two different trash pulls reflecting marijuana, drug paraphernalia, and Zwickl's prior trips to Colorado; and (3) information about Zwickl's most recent trip to Colorado just before the search warrant was issued. Taken together, the panel held these facts provided sufficient indicia of probable cause for officers to reasonably rely in good faith on the warrant. 2016 WL 556292, at *5.

Zwickl sought our review of the Court of Appeals decision, which we granted to resolve the lower courts' conflict on the good-faith doctrine's application and to address what we perceived as a flaw in the panel's abbreviated statement about its standard of review. Jurisdiction is proper. See K.S.A. 60-2101(b).

ANALYSIS

The Fourth Amendment to the United States Constitution guarantees the right to be free from "unreasonable searches and seizures." See *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). This court has recognized it could extend the state constitutional protections of Section 15 of the Kansas Constitution Bill of Rights beyond the federal guarantees provided by the Fourth Amendment but has not done so to date. Instead, we have relied on the United States Supreme Court's Fourth Amendment jurisprudence in applying Section 15 protections. See *Hoeck*, 284 Kan. at 463; *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993).

Under our jurisprudence, if evidence is obtained illegally, "its suppression may be warranted under the exclusionary rule." *State v. Powell*, 299 Kan. 690, 694, 325 P.3d 1162 (2014); see *State v. Karson*, 297 Kan. 634, Syl. ¶ 3, 304 P.3d 317 (2013) ("Neither the Fourth Amendment . . . nor § 15 . . . expressly prohibits the use of evidence obtained in violation of their protections. Instead, the judicially created exclusionary rule prevents the use of unconstitutionally obtained evidence in some circumstances."). The exclusionary rule's primary function is to deter improper police conduct by removing the incentive to violate constitutionally protected rights. See *Powell*, 299 Kan. at 694-95 (exclusionary rule works as a "deterrent to future violations"); *State v. Pettay*, 299 Kan. 763, 769, 326 P.3d 1039 (2014) (noting the exclusionary rule is not absolute, "[i]t is a deterrent measure, not a personal constitutional right," and its application is limited to certain situations where "its remedial purpose is effectively advanced").

To account for this deterrent purpose, based on an "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate," the United States Supreme Court forged the good-faith exception to the exclusionary rule. See *Leon*, 468 U.S. at 913, 922. Under *Leon*, evidence is not excluded "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) (quoting *Leon*, 468 U.S. at 922).

In *Hoeck*, this court adopted *Leon* as the law in Kansas and acknowledged that the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that warrant is ultimately determined later to be invalid. *Hoeck*, 284 Kan. at 463 (citing, *e.g.*, Kan. Const. Bill of Rights, § 15). The exceptions to this general rule are when:

9

"(1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned [a judge's] detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized." *Hoeck*, 284 Kan. at 464.

The parties agree this appeal is based entirely on the third exception.

*Standard of review*

At the outset, we must correct the panel's recitation of its standard of review. It stated the good-faith exception's applicability is "a question of law subject to unlimited review." *Zwickl*, 2016 WL 556292, at *4. The panel cited *Hoeck* for this assertion, but a closer reading shows the *Hoeck* court was addressing a different question, *i.e.*, whether Kansas courts had been correctly construing the *Leon* good-faith exception. See *Hoeck*, 284 Kan. at 447 ("The question of whether this court has correctly construed the *Leon* good faith exception is one of law.").

But after the *Hoeck* court adopted *Leon*, it then had to apply *Leon* to the facts before it. In doing so, the court employed a bifurcated standard of review to determine whether the district court erred suppressing evidence. Under that standard, an appellate court considers whether the factual underpinnings of a district court's decision were supported by substantial competent evidence and then reviews de novo the ultimate legal conclusion drawn from those facts. 284 Kan. at 464; see also *Powell*, 299 Kan. at 700 (using bifurcated standard to decide whether good-faith exception applies); *Karson*, 297 Kan. at 639 (same); *State v. Dennis*, 297 Kan. 229, 234, 300 P.3d 81 (2013) (same).

10

Use of the bifurcated standard, of course, makes sense when a reviewing court considers the exceptions to the good-faith doctrine. For example, a district court necessarily would engage in fact finding when deciding if the magistrate issuing a warrant was deliberately misled or had wholly abandoned the neutral and detached role expected from a judge. By the same token, when the material facts are undisputed, appellate review would be de novo since the only question remaining would be a legal one. See *Karson*, 297 Kan. at 639 ("[T]he facts material to the legal issues on review are not in dispute. The only remaining inquiry is whether the appropriate remedy is to suppress the evidence seized. This is a question of law.").

Even so, the panel's use of de novo review was not error under these circumstances because the argument was limited to whether there was probable cause to issue the warrant. The facts contained in the affidavit were never disputed, the record on appeal reflects no factual disagreements, and nothing suggests the issuing magistrate had any information supporting the warrant other than the affidavit. Accordingly, the sole inquiry before the Court of Appeals was whether the appropriate remedy for the invalid warrant was to suppress the evidence based on the third *Leon* exception. This was a question of law over which the Court of Appeals did have unlimited review.

We now turn to whether the Court of Appeals was correct when it concluded the good-faith exception should apply because the warrant contained sufficient indicia of probable cause.

*Discussion*

"It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Leon*, 468 U.S. at 921. Accordingly, "[i]n the

11

ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921. Because of this, application of the exclusionary rule based on the warrant's invalidity due to the magistrate's error "cannot logically contribute to the deterrence of Fourth Amendment violations" because an officer who has obtained the warrant from a judge can do "literally nothing more . . . in seeking to comply with the law." 468 U.S. at 921. If a search is conducted pursuant to a warrant, that warrant "'normally suffices to establish'" the law enforcement officer's good faith in conducting the search, and such a search "'will rarely require any deep inquiry into reasonableness.'" 468 U.S. at 922.

For the purposes of determining when a warrant contains sufficient indicia of probable cause, we have previously characterized *Leon* as delineating a probable cause continuum:

"Our careful review of the [*Leon*] decision finds only two probable cause standards mentioned. These two standards . . . pinpoint two ends of a probable cause continuum. At one end are affidavits that "'provide the magistrate with a *substantial basis for determining the existence of probable cause*."' (Emphasis added.) [*Leon*,] 468 U.S. at 915. In those cases, there is a valid warrant. See . . . *Hicks*, 282 Kan. [at] 603 . . . . At the other end of the continuum are the so-called 'bare bones' affidavits, those affidavits so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. This is [one] circumstance where an officer's reliance would be objectively unreasonable and suppression would be appropriate. In the analytical space between the ends of the continuum are those cases where the warrant is ultimately found to be unsupported by an affidavit containing a substantial basis for the determination of probable cause, but where officers executed the warrant in objective good faith. It is in this analytical space between the extremes on the continuum that the good faith exception applies. In those cases where the good faith exception applies, the affidavits do not provide a substantial basis for the determination of probable cause but do provide some

indicia of probable cause that is sufficient to render official reliance reasonable." *Hoeck*, 284 Kan. at 452-53.

"The threshold to avoid the *Leon* good-faith exception is a high one." *State v. Powell*, 299 Kan. 690, 701, 325 P.3d 1162 (2014). Our task is to "evaluate whether it was entirely unreasonable for the officers to believe the warrant was valid . . . ." 299 Kan. at 701. To do so, "we look to the affidavit in its entirety" and determine "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Powell*, 299 Kan. at 701 (quoting *Leon*, 468 U.S. at 922 n.23). So long as the affidavit contained more than "'bare bones,'" the officers' reliance on the warrant was reasonable. See *Hoeck*, 284 Kan. at 452. Other courts have described the affidavit content sufficient to invoke the good-faith exception as information establishing a "minimal nexus between the place to be searched and the suspected criminal activity." *United States v. Augustine*, 742 F.3d 1258, 1263 (10th Cir. 2014).

In Zwickl's case, we cannot help but observe that two different courts looked at the same document and arrived at opposite conclusions about the indicia of probable cause and how an objectively reasonable law enforcement officer would view the affidavit's contents after the judge issued the warrant. The quandary for the officer is apparent and underscores the continuum described in *Hoeck*. That noted, we agree with the panel that the affidavit contained sufficient indicia of probable cause that the officers' reliance on the warrant was not entirely unreasonable, so the district court's suppression order was error.

To begin with, the portion of the affidavit describing the two informants' statements supplies indicia of probable cause concerning Zwickl's illegal activity. C.I. # 1—who said Zwickl was picking up marijuana in Colorado and selling it—had previously proven to be reliable and credible, but those statements were 10-months old

13

and contained little detail. Even so, C.I. # 1's information was relevant to show Zwickl's ongoing criminal activity and was not so stale as to destroy its value in establishing probable cause when taken in context with the other information in the affidavit. See *State v. Longbine*, 257 Kan. 713, 718, 896 P.2d 367 (1995) (lapse of time that removes probable cause depends on case's circumstances), *disapproved of on other grounds by Hoeck*, 284 Kan. 441. C.I. # 1's statements, when considered along with C.I. # 2's tip from nearly a year later also stating that Zwickl was picking up marijuana in Colorado a couple times a month, the three hotel receipts showing Zwickl had been in Colorado several times in June and July 2012, and the surveillance of Zwickl's trip to Colorado in August 2012, illustrate a continuous pattern of illegal conduct over many months, which support probable cause.

C.I. # 2's tips also contained indicia of reliability, although the affidavit said C.I. # 2 had not previously proven to be reliable or credible. C.I. # 2's own purchase of marijuana from Zwickl provided some basis of knowledge, and the tip was corroborated by C.I. # 1's similar statements. See *Hicks*, 282 Kan. at 615 (if informants' tips are independent of each other, "they could be characterized as mutually corroborative"). Furthermore, C.I. # 2's information was verified by law enforcement's independent investigation. For instance, the affidavit shows officers confirmed C.I. # 2's description of Zwickl's house and the statement about Zwickl's frequent trips to Colorado.

Next, the portion of the affidavit describing the trash pulls from Zwickl's residence further supplied indicia of involvement in criminal activity. Suspicious items obtained from a trash pull often support finding some indicia of probable cause. See, *e.g.*, *United States v. Thurmond*, 782 F.3d 1042, 1044 (8th Cir. 2015) ("[I]tems found in a trash pull, standing alone, may be sufficient to establish probable cause."); *United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003) (evidence retrieved from defendant's garbage, standing alone, sufficient to establish probable cause, noting "the presence of discarded marijuana

14

stems and seeds reasonably suggest[s] that ongoing marijuana consumption or trafficking is occurring"). Moreover, the affidavit's description of the trash pulls and the surveillance of Zwickl's trip to Colorado supplied the required minimum nexus between Zwickl's criminal activity and the place to be searched—his vehicle.

The Colorado surveillance drew extra attention from both lower courts in their respective decisions whether to exclude the seized evidence. The district court criticized the affidavit's descriptions about the activities in Colorado as meaningless to the drug investigation, while the panel concluded, "With evidence of prior trips to Colorado, this trip add[ed] additional support to the affidavit statements that Zwickl was in Colorado to resupply marijuana for his business and that the Mustang probably would contain marijuana upon its return to Hutchinson." 2016 WL 556292, at *7.

As the panel indicated, the Colorado surveillance must be taken in context with the other information. And when viewed through that lens, the surveillance supports what the two confidential informants told investigators: Zwickl supplied his drug business from Colorado, where marijuana availability is known to law enforcement, and used the Mustang in that endeavor. See, *e.g.*, *State v. Mullen*, 304 Kan. 347, 357, 371 P.3d 905 (2016) (considering the affidavit's information—"[t]he package had been mailed from a known narcotics source state"—when assessing an anticipatory search warrant); *Hicks*, 282 Kan. at 613-14 (noting that in deciding if an affidavit supplies probable cause for a search warrant, a judge considers the totality of the circumstances presented and makes "a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place").

Applying *Leon* and its progeny, this case is not one of those unusual circumstances in which there was so little indicia of probable cause in the affidavit that a reasonable law

15

enforcement officer would override the probable case determination found by the magistrate and refuse to execute the warrant. See *Hoeck*, 284 Kan. at 464-65. Accordingly, we affirm the panel's decision to reverse the district court. The case is remanded to the district court for further proceedings.