NOT DESIGNATED FOR PUBLICATION

No. 121,441

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RAFAEL ZUNIGA-RODRIGUEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed August 28, 2020.
Reversed in part, vacated in part, and remanded with directions.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: Rafael Zuniga-Rodriguez appeals from a judgment of the trial court
denying his K.S.A. 60-1507 motion after concluding that his trial counsel's ineffective
assistance did not prejudice him. The trial court concluded that even if his trial counsel's
ineffectiveness fell below an objectively reasonable standard for a defense counsel,
Zuniga-Rodriguez' convictions should be upheld under the good-faith exception to the
exclusionary rule. We disagree. As a result, we reverse his convictions, vacate his
sentences, and remand with directions.

1

*Zuniga-Rodriguez' underlying criminal case*

In 2015, Zuniga-Rodriguez was charged with possession with intent to distribute methamphetamine within 1,000 feet of a school, among other charges.

On January 15, 2016, the State moved for a *Jackson v. Denno* hearing to establish the admissibility of Zuniga-Rodriguez' statements to law enforcement. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). After an evidentiary hearing on the matter, the trial court held that the statements were voluntary and were admissible.

The case proceeded to a jury trial. Zuniga-Rodriguez was represented by court-appointed counsel, Nick Heiman. The jury convicted Zuniga-Rodriguez of possession of methamphetamine (a lesser included offense of his original charge), misdemeanor possession with intent to use drug paraphernalia, and possession of methamphetamine without a Kansas tax stamp affixed. The jury acquitted him of aggravated endangerment of a child and felony possession with intent to use drug paraphernalia.

On April 20, 2016, the trial court sentenced Zuniga-Rodriguez to 18 months' probation based on Senate Bill 123 and ordered the following underlying sentence: 15 months' imprisonment for his possession of methamphetamine conviction; 9 months in jail for his misdemeanor possession of drug paraphernalia conviction; and 6 months in jail for his tax stamp violation. The trial court ordered the jail time to run concurrent with the prison time.

*Zuniga-Rodriguez' direct appeal*

Zuniga-Rodriguez appealed to this court. See *State v. Zuniga-Rodriguez*, No. 116,031, 2017 WL 2834690 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 994 (2018). In that appeal, he argued that the trial court erred when it improperly admitted inculpatory statements. This court held that the issue was not properly before the court because Zuniga-Rodriguez did not lodge a contemporaneous objection during trial to the admission of his statements to police. 2017 WL 2834690, at *2.

On April 17, 2018, this court issued its mandate in his appeal.

*Zuniga-Rodriguez' K.S.A. 60-1507 motion*

On July 25, 2018, Zuniga-Rodriguez moved pro se for relief under K.S.A. 60-1507. In that motion, he alleged that his trial counsel was ineffective for failing to file a motion to suppress the search of his residence. On August 3, 2019, he filed a supplemental motion expounding on his claim that his trial counsel was ineffective. The trial court appointed counsel and ordered counsel to show cause why the case should not be dismissed for lack of jurisdiction because Zuniga-Rodriguez had been discharged from probation for the conviction that he now challenged.

On December 14, 2018, the trial court conducted a hearing on the show cause order. After hearing arguments, the trial court ordered that the motion could proceed and ordered Zuniga-Rodriguez to supplement his initial motion to correct insufficiencies.

On January 14, 2019, Zuniga-Rodriguez' trial counsel supplemented the original motion. This supplemental pleading further explained Zuniga-Rodriguez' claim that his trial counsel was ineffective for failing to move to suppress the search of his residence

3

and that trial counsel should have objected to the introduction of that evidence at trial. In the supplemental pleading, he also argued that his trial counsel was ineffective for failing to object to the admission of his statements to law enforcement.

The trial court held an evidentiary hearing on the motion. The appellate defender who represented Zuniga-Rodriguez on appeal testified that he did not raise the issue of whether the search of Zuniga-Rodriguez' trash can at his residence was lawful because trial counsel did not preserve that issue for appeal. The trial counsel, however, testified that he did not move to suppress the evidence from the trash can pull because he did not believe it was an issue that would be successful in a motion to suppress. Also, trial counsel acknowledged that Zuniga-Rodriguez asked him about possibly moving to suppress the evidence from the trash can pull. But the trial counsel believed there was "nothing there." The trial counsel also admitted that he did not preserve the issue of Zuniga-Rodriguez' statements to police because he failed to lodge a timely objection to the statements' admission.

Ultimately, the trial court held that trial counsel erred in failing to move to suppress Zuniga-Rodriguez' statements to the police and in failing to object to their admission at trial. Nevertheless, the trial court held that although trial counsel's actions were erroneous, Zuniga-Rodriguez failed to sustain his burden to show that his trial counsel's actions prejudiced him.

Also, the trial court held that Zuniga-Rodriguez' trial counsel was ineffective for failing to move to suppress the evidence seized during the trash can pull. Yet, the trial court again concluded that even if Zuniga-Rodriguez' trial counsel had moved to suppress this evidence, the outcome would not have been different because the affidavit to support the trash can pull would have been subject to the good-faith exception of the warrant requirement. Then the trial court held that there was no basis to believe that the police

4

officers misled the judge issuing the search warrant or that they were aware the warrant's application was so deficient that it should not have been signed by the judge.

Zuniga-Rodriguez now timely appeals.

*Did the Trial Court Err When It Denied Zuniga-Rodriguez' K.S.A. 60-1507 Motion?*

On appeal, Zuniga-Rodriguez argues that his trial counsel was ineffective in two ways: (1) failing to move to suppress the evidence seized from the trash can pull at his residence and (2) failing to object to the admission of his statements made to police while they executed the search warrant on his residence.

*Standard of Review*

According to a well-known standard, the trial court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Our standard of review depends on which of those three options a trial court chooses to use. *Sola-Morales*, 300 Kan. at 881. Here, the trial court denied Zuniga-Rodriguez' 60-1507 motion after a full evidentiary hearing. After such a hearing on a 60-

1507 motion, the trial court must issue "findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 225). An appellate court reviews the trial court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. Appellate review of the trial court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Kelly*, 298 Kan. 965, 969-70, 318 P.3d 987 (2014).

We draw guidance from the standard set out in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. Therefore, we will begin our focus with the second step of the *Strickland* standard. Assuming, as the trial court ruled, that trial counsel should have moved to suppress the evidence seized in

the trash can pull and that trial counsel should have objected to the admission of the statements to police, did trial counsel's failure to do so prejudice Zuniga-Rodriguez?

We turn to the question of whether the affidavit in support of the search warrant to search Zuniga-Rodriguez' residence was so lacking in underlying facts that a reasonable police officer would have recognized the absence of probable cause even though a judge signed the warrant.

1.    *The motion to suppress the evidence derived from the trash can pull*

Zuniga-Rodriguez argues that his trial counsel was ineffective for failing to move to suppress the results of the trash pull search at Zuniga-Rodriguez' residence. He argues there is a reasonable probability the outcome of the trial would have been different but for the admission of this evidence because without the evidence from the trash pull no search warrant would have been issued and Zuniga-Rodriguez would not have been interrogated at the scene during the search.

The trial court ruled that the failure of Zuniga-Rodriguez' trial counsel to challenge the search warrant was unreasonable; thus, trial counsel was ineffective. Nevertheless, the trial court ruled that there was no prejudice to Zuniga-Rodriguez because the good-faith exception to the search warrant would have applied to allow the admission of the seized evidence and the admission of Zuniga-Rodriguez' statements made during the search of his residence.

Although Zuniga-Rodriguez testified at trial that he possessed the methamphetamine in question, he would not have done so had the search warrant not been issued. The trial court already ruled that it was ineffective assistance of counsel for trial counsel not to have challenged the search warrant and the evidence seized in the

7

search. We must determine if the trial court was correct when it ruled that the good-faith exception would have applied to the affidavit in support of the search warrant.

Here, the affidavit for the search warrant made by Officer Dominick Vorherms stated the following:

"On 09-24-2015 at 0700 hrs, Deputy Samuels and l conducted a trash pull [at] . . . Exchange St. in Emporia, Lyon County, Kansas. I know from surveillance that Rafael Zuniga and Kara Peres are live [*sic*] at this residence. The Emporia Police Department shows Kara Peres address as . . . Exchange St. in Emporia, Lyon County, Kansas. I also know that Kara Peres and Zuniga are in a relationship from past law enforcement contact.

"The trash can at the residence was on the curb ready to be picked up on the West side of the street. This is also the normal day of trash pick for that residence. There were two trash cans on the curb at this time. Both trash cans were at the curb in front of . . . Exchange St. The trash cans of the neighbors [*sic*] residences were also at the curb at this time, and not near this residence's.

"Deputy Samuels removed three bags of trash bags from the trash can.

"Inside the trash bags were located three corners of plastic bags that appeared to have been ripped out off [*sic*] plastic bags. I know from my training and experience that illegal drugs are sometimes packaged in comers of plastic bags and then resold. We also collected a small zip lock bag that contained a white crystal residue. This residue was field tested by Deputy Samuels in a field tested kit designed for methamphetamine, this field test was positive for methamphetamine.

"Inside the trash bags we located a piece of mail addressed to Rafael Zuniga at . . . Mechanic St. from Abby Zuniga at . . . Exchange St. I also located a document to Rafael Zuniga."

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The judicially created exclusionary rule "'safeguards Fourth Amendment rights by preventing the use of unconstitutionally obtained evidence in criminal proceedings against victims of illegal searches.'" *State v. Hubbard*, 309 Kan. 22,

8

32, 430 P.3d 956 (2018). For the exclusionary rule to apply, there must first be a constitutional violation. 309 Kan. at 33. We turn our attention to the question of whether the search of Zuniga-Rodriquez' home was a constitutional violation.

> "'When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016).

To support a search warrant, information gathered from a trash pull must provide "some definite link between the illegal or suspicious activity described in an affidavit and the . . . residence [to be searched;] [t]hat link must be sufficient to establish a fair probability that contraband or evidence of a crime will be found in the residence." *State v. Malone*, 50 Kan. App. 2d 167, 173, 323 P.3d 188 (2014). "Some evidence establishing a nexus between drug evidence discovered in a garbage bag and a residence to be searched is necessary to support the conclusion that the drug evidence came from the home." *State v. Hicks*, 282 Kan. 599, 617, 147 P.3d 1076 (2006). While multiple trash pulls are not required to support a search warrant, other panels of our court have "taken a fairly strict view as to when a single trash pull alone will support a search warrant for a residence." *State v. Barnes*, No. 117,673, 2018 WL 3320200, at *5 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1349 (2019). "This does not necessarily mean the evidence linking the contraband with the residence to be searched must be found in the same trash bag. The linkage can be established by other evidence such as surveillance

reports" so as to dispel any possibility that a passerby placed the contraband in the trash container. *Malone*, 50 Kan. App. 2d at 173; see *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007).

For example, in *State v. Bennett*, No. 92,997, 2005 WL 1429919, at *5 (Kan. App. 2005) (unpublished opinion), this court held that the search warrant affidavits were insufficient when the affidavits "failed to mention whether the indices of residence were found in this same trash bag as the contraband." Such an indication was important because, otherwise, the four corners of the affidavits did not dissolve the possibility that another person other than a resident of the residence in question placed the contraband in the trash. 2005 WL 1429919, at *5. See *Malone*, 50 Kan. App. 2d at 174 (holding affidavit insufficient when only one trash pull occurred and there was no surveillance evidence connecting the trash bags containing contraband with the residence or its residents, although other trash bags did contain indicia of residence). See also *Barnes*, 2018 WL 3320200, at *4-5 (holding affidavit insufficient where the trash searched was loose rather than in a garbage bag and there was no surveillance information linking the contraband to the occupants of the residence, as well as other errors with the affidavit).

In contrast, in *State v. Dickerson*, No. 90,654, 2004 WL 1489048 (Kan. App. 2004) (unpublished opinion), this court held that the search warrant affidavit was sufficient when the single trash pull yielded contraband and indicia of residence—a prescription bag and work schedules bearing the defendant's name—in the same trash bag. This court rejected the argument that the contraband could have come from another occupant of the duplex because the contraband was located "in an individual trash bag inside the container which also contained" the indicia of residence. 2004 WL 1489048, at *3.

The case here is like *Malone*, *Bennett*, and *Barnes*. There is nothing in the affidavit for the search warrant that connects the indicia of residence with the contraband. The search warrant affidavit states that the officers pulled three trash bags and that "[i]nside the trash bags [the officers] located *a* piece of mail addressed to Rafael Zuniga at at Mechanic St. from Abby Zuniga at Exchange St." and "*a* document [addressed] to Rafael Zuniga." (Emphases added.) There is no indication that the indicia of residence and the contraband were found in the same bags. Also, there is no information in the affidavit regarding surveillance of the trash receptacle to dispel the possibility that a nonresident of the house could have placed contraband in the bin. Additionally, the addresses listed on the piece of mail indicated that Zuniga-Rodriguez was not residing at the Exchange Street residence but was residing at the Mechanic Street residence. While it may be a miswording, the affidavit states that the piece of mail was "addressed to Rafael Zuniga at Mechanic St. from Abby Zuniga at Exchange St." Yet, the search of the residence was conducted at Exchange Street. Unfortunately for the State, we cannot infer information outside of what is included in the four corners of the affidavit for a search warrant. See *Malone*, 50 Kan. App. 2d at 172.

To summarize, in the three trash bags, Deputy Samuels found drug contraband and mail addressed to Zuniga-Rodriguez at Mechanic Street. Nevertheless, the mail addressed to Zuniga-Rodriguez at Mechanic Street was not the address of the house searched. Thus, there is no sufficient link to establish a fair probability that contraband or evidence of a crime would have been found at the residence at Exchange Street than at the residence at Mechanic Street. See 50 Kan. App. 2d at 173.

Also, Officer Votherms averred in his affidavit that the police department shows Kara Peres' address as Exchange Street. In addition, the affidavit averred that Peres and Zuniga-Rodriguez were in a relationship based on "past law enforcement contact." What was this "past law enforcement contact"? When did this contact occur? Is this a statement

11

of fact? If so, is the belief of this affiant based on his personal observation, on hearsay, or on someone else's observation? No statement is given in the affidavit as to who observed this past contact between Peres and Zuniga-Rodriguez. This information is important because the issuing magistrate or judge must know something of the basis of that belief to allow him or her to make an independent determination of probable cause. Nowhere in this affidavit is the source of this information revealed by the affiant. Nor is there any corroborating evidence for this statement.

Besides, the nature of the evidence (three corners of plastic bags and a small zip lock bag) is not such that its continued presence in the home is probable. On the contrary, these leavings are merely the waste product of past methamphetamine use. The waste products of methamphetamine use do not, of themselves, indicate any continuing presence of contraband in the home. Indeed, this single trash pull failed to eliminate the possibility that Peres and Zuniga-Rodriguez could have hosted a party at Exchange Street where one of their guests, without their knowledge, discarded the methamphetamine residue into the three trash bags.

In addition, the affidavit here in support of a search warrant is deficient in another way. For example, in issuing a search warrant, a magistrate or a judge is entitled to draw reasonable inferences about where evidence is likely to be kept and, in the case of frequent drug users, evidence is likely to be found where they live. That fact was absent from the affidavit in this case. Zuniga-Rodriguez was not a known drug user or dealer. Thus, the affidavit here cannot support an inference that evidence of illegal drugs would be found at Zuniga-Rodriguez' residence.

Finally, the affiant here averred in the second paragraph of the affidavit that "[t]he trash can at the residence was on the curb ready to be picked up on the West side of the street." This averment implies that the trash can at the residence was already at the curb

12

when it was observed by affiant or Deputy Samuels on the morning of September 24, 2015. In the third sentence of this paragraph, however, the affiant averred that "[there were two trash cans on the curb at this time." Next, the affiant averred that "[b]oth trash cans were at the curb in front of the Exchange St. [residence]." In the third paragraph, we note that the affiant averred that "Deputy Samuels removed the three bags . . . from the trash can." This would imply that the three trash bags were all contained in one trash can. And, thus, we must assume the second trash can was either empty or if there was something in that trash can, Deputy Samuels decided not to pull anything from the second trash can.

In addition to the confusing facts recited in paragraph two and three of this affidavit, there is one glaring fact absent from this affidavit. The affidavit here does not set forth a single corroborating fact that is sworn to within the personal knowledge of the affiant that either he or Deputy Samuels observed Zuniga-Rodriguez or Peres place the three trash bags in the trash can located at the Exchange Street residence. Like *Barnes*, the affiant here has furnished no information when the trash can had been placed at the curb of Zuniga-Rodriguez' residence, who placed the trash can there, or where the trash can was kept. And so, there was a defect apparent on the face of the affidavit. The affidavit failed to show probable cause—a reasonable belief—that the contraband or evidence of a crime was at the place to be searched. As a result, the facts presented in the affidavit to the magistrate or the judge lacked reasonable grounds for the magistrate or the judge to believe that the property to be seized was at Zuniga-Rodriguez' residence.

Given this analysis, the trial court correctly concluded that Zuniga-Rodriguez' trial counsel was ineffective for failing to move to suppress the evidence recovered from the search of his home. Also, when the trial court applied the *Leon* good-faith exception here, it implicitly ruled that substantial competent evidence existed that would show the search

of Zuniga-Rodriguez' residence was illegal and would have violated his Fourth Amendment rights under the United States Constitution.

Having found the search of Zuniga-Rodriguez' home unconstitutional, we must consider if Zuniga-Rodriguez was prejudiced by his trial attorney's failure to move to suppress the evidence derived from the search. The trial court ruled that the good-faith exception to the warrant requirement prevented any prejudice because the exception to the exclusionary rule would have permitted admission of the evidence derived from the insufficient affidavit for the search warrant. Specifically, the trial court ruled:

> "Even if I conclude that counsel should have raised the issue of the validity of the search warrant application and that issue had been addressed at the time—at the appropriate time by motion, the Court also has to deal with the question of whether or not there is a good faith exception to the rule which would have barred admissibility of the evidence. And after examining that good faith exception and whether or not there are any exceptions to the good faith rule, it is my opinion that there is no basis for me to assume that the good faith exception would not have applied. In other words, there is, particularly here, no basis for me to believe that the police officers misled the judge or that they were aware that the warrant application was so deficient that it should not have been signed by the judge or any of the other basis for the denial of the application of that good faith exception.
>
> "Under those circumstances, I think then, even if this issue were raised, that the search warrant results would have resulted in the admissibility of those items that were found pursuant to the search warrant. Therefore, I am not convinced that the outcome of the proceeding would have been different in any respect. It is therefore my decision following this analysis that the defendant has not met its burden to prove that the deficient performance would have likely resulted in any change in the outcome of the underlying proceeding. It's therefore my decision that the defendant's motion pursuant to 60-1507 is denied."

The trial court similarly ruled in its written order denying Zuniga-Rodriguez' 60-1507 motion:

"THEREUPON, the Court further finds failure by defense counsel to make significant inquiries pertaining to the Search Warrant of petitioner's residence, and failure to challenge that search warrant fell below an objectively reasonable standard for defense counsel. The court, having considered the arguments of counsel, notes that based upon the evidence presented, there is no reason to believe that the good faith exception contained in *United States v. Leon*, 468 U.S. 897 (1984) would not apply and thus the court finds the probability of establishing prejudice cannot be made."

When a search is found to be an unreasonable violation of an individual's Fourth Amendment rights, the exclusionary rule operates to bar the admission of any evidence resulting from the unreasonable intrusion on the individual's rights. *State v. Althaus*, 49 Kan. App. 2d 210, 219, 305 P.3d 716 (2013). Nevertheless, there are exceptions to the exclusionary rule.

"The Fourth Amendment to the United States Constitution established a policy, and the United States Supreme Court has expressed a preference that a neutral, objective magistrate should be involved in the decision to allow police to search a residence. In furtherance of that policy, the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 908-09, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), held the exclusionary rule should not be applied in cases where law enforcement officers relied in good faith on a signed warrant in conducting a search. Employing a 'costs-benefits' analysis, the Supreme Court concluded, 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.' 468 U.S. at 922." *Malone*, 50 Kan. App. 2d at 176.

The good-faith exception rule is applicable in Kansas. See *State v. Hoeck*, 284 Kan. 441, Syl. ¶¶ 1, 2, 163 P.3d 252 (2007). Under the good-faith exception to the warrant

requirement, the Fourth Amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid except where:

"'(1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned [a judge's] detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized.' [Citation omitted.]" *State v. Zwickl*, 306 Kan. 286, 292, 393 P.3d 621 (2017).

The trial court here relied on the first and third circumstances of the good-faith exception. Yet, the trial court's consideration of these categories was wanting, and the judge unfortunately did not elaborate as to why these two circumstances were applicable here except to say "there is no basis for [the 1507 judge] to assume that the good faith exception would not have applied" and, particularly, there was "no basis for [the 1507 judge] to believe that the police officers misled the [issuing] judge or that they were aware that the warrant application was so deficient that it should not have been signed by the judge."

"A law enforcement officer should understand the broad precepts implicated in a Fourth Amendment search and should recognize an obviously deficient warrant. Good faith is an objective standard measured by how a reasonable law enforcement officer would view the circumstances. Thus, an officer poorly versed in basic search and seizure requirements may not rely on the good-faith exception solely because he or she subjectively believes the judge acted properly in signing a warrant. *Althaus*, 49 Kan. App. 2d at 222." *Malone*, 50 Kan. App. 2d at 178.

16

In *State v. Baskas*, No. 115,226, 2017 WL 947732, at *3 (Kan. App. 2017) (unpublished opinion), this court considered application of the good-faith exception to an affidavit like the one at hand. That search warrant affidavit stated, in pertinent part:

> "'On [June 15, 2011,] Officer J. Gaines conducted a trash pull on . . . North 12th St. Officer Gaines removed several bags of trash placed at the curbside for disposal at . . . North 12th St. Officer J. Gaines found multiple baggies with missing corners and multiple baggies that had knots in them. Officer J. Gaines knew from training and experience that narcotic dealers will package [their] narcotics in sandwich baggie corners for ease of sale. The remaining portion of the baggies are torn or cut off and discarded. Also found were multiple packages of cigars and rolling papers and a large amount of loose leaf tobacco. Officer J. Gaines knew from training and experience that marijuana users will empty and discard the tobacco from a cigar and then refill the cigar with narcotics to be smoked. Also located in the trash was green leafy vegetation and stems. Officer J. Gaines completed a field test kit on a portion of the green leafy vegetation. That test had a presumptive positive result for Marijuana.'" 2017 WL 947732, at *3.

This court held that the good-faith exception did not apply, stating:

> "But the application fails to present sufficient information to establish where that unlawful activity might be taking place or, more precisely, that it was taking place in Baskas' house. The only facts recited in the application linking the contraband to the house established that the officers found the trash bags at the curb in front of the house. Nothing in the applications shows a tighter connection, such as discarded mail for that address in the trash. The location of the trash bags, which are distinctly portable objects easily moved from place to place, fails to forge a sufficient legal connection between the contents and the nearest residence to support a search warrant." 2017 WL 947732, at *3.

This court continued:

> "Given the widespread use of trash pulls, especially as a means of obtaining information to support search warrants, and the abundant caselaw outlining the requisite

17

probable cause for those warrants, such as Hicks, we conclude that a reasonably trained law enforcement officer would in 2011 understand the need for some factual nexus in a warrant application tying the recited criminal activity to the place to be searched for contraband or other evidence. Accordingly, that law enforcement officer ought to recognize an application and search warrant devoid of those connective facts to be patently deficient, even if a judge were to review the application and approve the warrant. As we have said, the Fourth Amendment requires the place to be searched to be identified specifically and the reason why—the facts establishing probable cause—to be presented to a judicial officer for review. Those are both elemental and elementary requirements of a reasonable search comporting with the Fourth Amendment." 2017 WL 947732, at *3.

Here, the application for the warrant did not link the indicia of residence and the contraband to the same trash bag and, therefore, it did not connect the contraband found in the trash pull to Zuniga-Rodriguez' house. Although the application contains the discovery of both contraband and indicia of residence in the three-bag trash pull, the wording of the affidavit—be it lack of attention to detail or a creative attempt to bypass this requirement—fails to satisfy the requirements courts have reiterated regarding trash pulls. As stated in *Baskas*, 2017 WL 947732, at *5, "the failure to include such information in the application betrays a basic misunderstanding of what a law enforcement officer must present to a judge to obtain a search warrant." In 2015, a reasonably trained law enforcement officer would, and should, understand the need for the indicia of residence and the contraband derived from a trash pull to be located in the same discarded trash bag or for information of surveillance of the trash to be included so as to dispel the possibility that a passerby placed the contraband in the bin. The four corners of the affidavit at issue here fail to do so. Thus, we conclude that the good-faith exception was not applicable here. As a result, Zuniga-Rodriguez' trial counsel's ineffective performance prejudiced him. And so, there is a reasonable probability the jury would have reached a different result absent this deficient performance because all the evidence from the search would have been suppressed under the exclusionary rule.

We have difficulty in concluding, as the dissent does, that the affidavit here was not a "bare bones" affidavit like the one referred to in *Zwickl*, 306 Kan. at 294. In declaring an exception to the exclusionary rule, *Leon* made clear that "[d]eference to the magistrate … is not boundless." In particular, *Leon* held that the good faith exception does not apply when the search warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). Such is the substance of this affidavit.

It was for the magistrate or the judge, not Officer Vortherms, to decide whether there was probable cause for the issuance of the search warrant. Nevertheless, that function could not be properly completed by the magistrate or the judge unless Officer Vortherms first completed his own different responsibility, that is, make sure his affidavit has alleged underlying facts sufficient to show the existence of probable cause for the search of the residence on Exchange Street. The purpose of this requirement is to allow the issuing magistrate or judge to make an independent determination of whether there is probable cause to believe that seizable property or contraband will be at the place to be searched.

The dissent sets out nine statements from the affidavit. Slip op. at 29 (Gardner, J., dissenting). The dissent contends that these statements show some connection between Zuniga-Rodriguez and the trash and between the trash and the house. We will examine each of these statements.

- The officer knew from surveillance that Zuniga-Rodriguez lived at the residence.

Is this a statement of fact? Only a statement which is based on observable, corroborating evidence can be considered a statement of fact. Officer Vortherms may believe this statement is correct. But the magistrate or the judge must, of course, know

19

something of the basis for that belief. Nowhere in the affidavit does it state when or how often Officer Vortherms surveilled the residence or how he determined that Zuniga-Rodriguez lived at the residence. Thus, this statement is a factual conclusion with no corroborating evidence or facts from which to infer whether this factual conclusion is true or not.

- The officer knew from past law enforcement contact that Zuniga-Rodriguez was in a relationship with Peres.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 12.

- The Emporia Police Department showed Peres' address as Exchange Street in Emporia.

But is this a fact? A statement of fact is only as credible as its source. How would one verify this assertion to see whether it is a fact or not? The keeper of the business records of the Emporia Police Department might be an acceptable source of this information for this statement. Nevertheless, nowhere in the affidavit are we given an acceptable source for this statement.

- Officers conducted a trash pull at the Exchange residence from a trash can set at the curb of that residence on the normal day of trash pickup for that residence.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 13.

- The neighbors' trash cans were also at the curb but were not near the trash cans for the Exchange residence.

20

So what? This statement adds no support to the issuance of the search warrant if the officers were properly surveilling the trash pull.

- An officer removed three bags of trash from a trash can at the Exchange residence.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 13.

- Inside the bags, officers found baggies indicating drug distribution and a small ziplock bag containing methamphetamine.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 12.

- Inside the bags an officer found a piece of mail addressed to Rafael Zuniga at Mechanic St. from Abby Zuniga at Exchange St.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 11-12.

- Inside the bags, an officer found a document addressed to Rafael Zuniga.

The majority pointed out the deficiency of this statement previously in this opinion. See slip op. at 11.

The affidavit here alleges a hodge-podge of factual conclusions without observable, for the most part, or corroborating evidence in support of these factual conclusions. Thus, the sources of these factual conclusions are left to speculation.

Also, the affidavit here failed to clearly indicate which facts alleged in the affidavit were within the affiant's own personal knowledge. As a result, the affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence

21

entirely unreasonable.'" 468 U.S. at 923. And so the affiant, Officer Vortherms, would have or should have immediately recognized the absence of probable cause even though a magistrate or a judge signed the warrant. Thus, the majority holds that the State cannot benefit from *Leon*'s good-faith exception.

2. *The objection to Zuniga-Rodriguez' statements to law enforcement*

Zuniga-Rodriguez also argues his trial counsel should have lodged a contemporaneous objection to the admission of his post-*Miranda* statements to law enforcement. Specifically, Zuniga-Rodriguez challenges the statements he made to the police about selling drugs, during which he at one point asked if he could have the drugs the police found back so he could sell them to make his money back. Zuniga-Rodriguez raised this argument at the evidentiary hearing. He also raised this argument in his supplemental pleading on remand before the trial court.

Nevertheless, our court considered the admissibility of Zuniga-Rodriguez' statements to police on his direct appeal. The court initially held that the issue was not properly before the court because counsel did not lodge a contemporaneous objection to the admission of the statements—that the failure to do so is what Zuniga-Rodriguez alleges was ineffective assistance of counsel on this appeal. See *Zuniga-Rodriguez*, 2017 WL 2834690, at \*2.

Nevertheless, this court, alternatively, addressed the merits of his argument and held:

> "Alternatively, even if the issue were properly before us on the merits, we conclude sufficient evidence supports the district court's conclusion that Zuniga-Rodriguez' statements to law enforcement were voluntary.

22

'When a trial court conducts a *Jackson v. Denno* hearing, determines a defendant's statements were freely, voluntarily, and knowingly given, and admits the statements into evidence at the trial, an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard and reviews the ultimate legal conclusion drawn from those facts de novo. In doing so, an appellate court does not reweigh evidence or assess the credibility of the witnesses but will give deference to the trial court's findings of fact.' *State v. Warledo*, 286 Kan. 927, 934-35, 190 P.3d 937 (2008) (citing *State v. Harris*, 279 Kan. 163, 167, 105 P.3d 1258 [2005]).

"Zuniga-Rodriguez principally attacks the district court's finding that he was Mirandized prior to being questioned and makes numerous arguments attacking the officers' credibility. While we acknowledge the conflicting testimony on this point, we are forbidden from reweighing the evidence or offering our own credibility assessment. The district court had the opportunity to see and evaluate the witnesses, and sufficient evidence supports the court's findings that Zuniga-Rodriguez' statements were voluntarily made." 2017 WL 2834690, at *2.

We believe that this court's alternative decision in the preceding issue was dictum. This court's decision that "Zuniga-Rodriguez' statements to police were voluntary," was dicta because the decision was not essential to this court's initial holding: that the issue was not properly before this court because Zuniga-Rodriguez had failed to lodge a contemporaneous objection during trial to the admission of his statements to police. 2017 WL 2834690, at *2.

Turning our attention to Zuniga-Rodriguez' objections concerning his statements he made to police, we note that the trial court here determined that Zuniga-Rodriguez' trial counsel had furnished him ineffective assistance of counsel in several different ways. First, trial court found that trial counsel should have moved to suppress Zuniga-Rodriguez' statements to police. Second, the trial court determined that trial counsel

23

should have made a contemporaneous objection to his statements to police when they were introduced into evidence during the trial. Third, the trial court found that trial counsel's failure to timely object to these statements at trial prevented Zuniga-Rodriguez from challenging the adverse *Jackson v. Denno* ruling on appeal.

As stated earlier, Zuniga-Rodriguez made statements to the police officers that he would like his methamphetamine back so he could sell it. Also, an officer testified that his statements were made during the search of his residence. Thus, it is evident that Zuniga-Rodriguez' inculpatory statements would have been suppressed if his trial counsel had moved to suppress those statements made by him during the search of his residence. Those statements would have been disallowed under the doctrine of "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Simply put, if the search of Zuniga-Rodriguez' residence was illegal, then his statements to the police officers were illegal under *Wong Sun.* And so, substantial competent evidence does not support the trial court's legal conclusion that Zuniga-Rodriguez was unprejudiced by the ineffectiveness of his trial counsel.

Thus, we reverse the trial court's ruling applying the good-faith exception under *Leon*, reverse Zuniga-Rodriguez' convictions, vacate his sentences, remand with directions to the trial court to suppress all evidence recovered from the trash pull and all statements made by Zuniga-Rodriguez to the police, and for further proceedings consistent with this opinion.

Reversed in part, vacated in part, and remanded with directions.

GARDNER, J., dissenting:  I respectfully dissent. Even if the majority is correct in finding that the affidavit lacks probable cause, I do not find it unreasonable for the law enforcement officers to believe the search warrant was valid under the circumstances. The affidavit does not show so little indicia of probable cause that a reasonable law enforcement officer would override the probable case determination found by the judge who signed the search warrant. See *State v. Zwickl*, 306 Kan. 286, 297, 393 P.3d 621 (2017); *State v. Hoeck*, 284 Kan. 441, 464-65, 163 P.3d 252 (2007).

As the United States Supreme Court has held, "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 921, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Absent unusual circumstances, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." 468 U.S. at 921. If a search is conducted pursuant to a search warrant obtained from a judge or magistrate, the warrant is normally sufficient to establish the good faith of a law enforcement officer in conducting a search. See 468 U.S. at 922.

"The threshold to avoid the *Leon* good-faith exception is a high one." *State v. Powell*, 299 Kan. 690, 701, 325 P.3d 1162 (2014). In determining whether this high threshold has been met, we must "evaluate whether it was entirely unreasonable for the officers to believe the warrant was valid." 299 Kan. at 701. We do so by looking to the affidavit in support of the search warrant in its entirety to determine "'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" 299 Kan. at 701 (quoting *Leon*, 468 U.S. at 922 n.23). We

must read the affidavit reasonably, examining the totality of the circumstances, and employing a healthy dose of common sense. Affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation, so we must remain cautious not to interpret their language in a hypertechnical manner.

Affidavits in support of a search warrant application range from those showing a substantial basis for probable cause to those that are merely bare bones affidavits.

> "Our Supreme Court has described search warrant affidavits in terms of a continuum. At one end are affidavits that provide a substantial basis for determining the existence of probable cause. In such cases, the warrant is valid. At the other end of the continuum are so-called 'bare bones' affidavits. Those affidavits are so lacking in indicia of probable cause that a belief in its existence is unreasonable. In those cases the officer's reliance on the warrant is objectively unreasonable and suppression is appropriate. In the middle of the continuum are affidavits that provide no substantial basis for determining probable cause but do provide some indicia of probable cause that is sufficient to render the officer's reliance on the warrant reasonable. In those cases, the good-faith exception applies. *State v. Zwickl*, 306 Kan. 286, 294-95, 393 P.3d 621 (2017)." *State v. Teske*, No. 117,748, 2018 WL 3596253, at *4 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan.1353 (2019).

The affidavit here falls in the middle of the continuum because even if it lacks probable cause it still gives some indicia of probable cause that would render an officer's reliance on it reasonable. This affidavit is not a bare bones affidavit—one that states only boilerplate, suspicions, beliefs, or conclusions, without providing some underlying factual circumstances about veracity, reliability, and basis of knowledge. See *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). And we should not confuse the kind of affidavit here that lacks probable cause with a bare bones affidavit. "The distinction is not merely semantical. There must be daylight between the 'bare-bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance

26

between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).

Although the affidavit may not show a substantial basis for probable cause, I would find that it is not patently insufficient, so that no well-trained officer could have reasonably relied on it. The majority finds to the contrary:

> "In 2015, a reasonably trained law enforcement officer would, and should, understand the need for the indicia of residence and the contraband derived from a trash pull to be located in the same discarded trash bag or for information of surveillance of the trash to be included so as to dispel the possibility that a passerby placed the contraband in the bin." Slip op. at 18-19.

But requiring the officer to *dispel the possibility* that a passerby placed the contraband in the trash bin misstates the bar for the *Leon* good-faith analysis by requiring the officer to show a substantial basis for probable cause.

In *Hoeck*, the court rejected its prior holdings that the substantial basis test may be applied in determining *both* whether the warrant is valid *and* whether the good-faith exception applies:

> "The *Leon* good faith exception applies when an affidavit does not supply a substantial basis for the determination of probable cause but does provide some indicia of probable cause sufficient to render official reliance reasonable. We disapprove any language in *State v. Longbine*, 257 Kan. 713, 721-22, 896 P.2d 367 (1995), *disapproved on other grounds by State v. Hicks,* 282 Kan. 599, 147 P.3d 1076 (2006), *State v. Ratzlaff*, 255 Kan. 738, 754-55, 877 P.2d 397 (1994), and *State v. Doile*, 244 Kan. 493, 495, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990), applying the test of whether there is a substantial

basis for the determination of probable cause to the determination of whether the good faith exception to the Fourth Amendment exclusionary rule applies." 284 Kan. 441, Syl. ¶ 2.

So the standard by which we judge an affidavit for purposes of the good-faith exception is less demanding than the "substantial basis" threshold required to prove the existence of probable cause in the first place. If good-faith reliance were judged by the substantial basis standard, "'the exception would be devoid of substance.'" *Laughton*, 409 F.3d at 748-49.

To obtain a warrant to search a suspect's residence, the affidavit must show some nexus between the illegal or suspicious activity described in the affidavit and the suspect's residence sufficient to establish a fair probability that contraband or evidence of a crime will be found in the residence, as the majority finds. But to meet the Leon good-faith exception, the affidavit must establish only a "'minimal nexus between the place to be searched and the suspected criminal activity.'" *Zwickl*, 306 Kan. at 295; *State v. Miller*, No. 96,514, 2007 WL 2178076, at *6 (Kan. App. 2007) ("[I]n determining whether the good faith exception applies here, we need only determine whether the affidavit provided some indicia of probable cause sufficient to render official reliance reasonable.").

When a minimal nexus is shown between the criminal activity and the place to be searched, yet the showing is insufficient to show probable cause, *Leon*'s good-faith exception applies. See, e.g., *State v. Malm*, 37 Kan. App. 2d 532, 547-49, 154 P.3d 1154 (2007) (holding under *Leon* some nexus between the defendant's criminal activity and the residence to be searched was sufficient to find officers acted in good faith in searching the residence based on a warrant); *Miller*, 2007 WL 2178076, at *6 (finding that the affidavit provided "some indicia of probable cause" sufficient to render official reliance reasonable so *Leon*'s good-faith exception applied). "If the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it

28

may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable. *Laughton*, 409 F.3d at 749-50." *United States v. Ward*, 967 F.3d 550, __(2020 WL 4282161, at *6) (6th Cir. 2020) (Griffin, J. dissenting).

This affidavit meets the minimal nexus test. A natural reading of it shows some connection between Zuniga-Rodriguez and the trash and between the trash and the house. The affidavit stated:

- The officer knew from surveillance that Zuniga-Rodriguez lived at the residence;
- the officer knew from past law enforcement contact that Zuniga-Rodriguez was in a relationship with Peres;
- the Emporia Police Department showed Peres' address as . . . Exchange Street in Emporia;
- officers conducted a trash pull at the Exchange residence from a trash can set at the curb of that residence on the normal day of trash pickup for that residence;
- the neighbors' trash cans were also at the curb but were not near the trash cans for the Exchange residence;
- an officer removed three bags of trash from a trash can at the Exchange residence;
- inside the bags, officers found baggies indicating drug distribution and a small zip lock bag containing methamphetamine;
- inside the bags, an officer found a piece of mail addressed to Rafael Zuniga on Mechanic Street from Abby Zuniga on Exchange Street; and
- inside the bags, an officer found a document addressed to Rafael Zuniga.

29

By showing some evidence between the criminal activity at issue and the place to be searched, the affidavit meets the minimal nexus test, warranting the *Leon* good-faith exception. The affidavit contains factual allegations, not just suspicions or conclusions. Thus, this is not the type of "bare bones" affidavit on which it would be objectively unreasonable for an officer to rely.

Under these circumstances, it was not "entirely unreasonable" for the law enforcement officers to believe the search warrant was valid. Instead, the officers acted in reasonable reliance on the search warrant and could not have been expected to second-guess the magistrate's determination that the search was legal. Here, as in *Hoeck*, "there was no bad faith or wrongdoing shown in the issuance or execution of the warrant and, thus, no need to deter any police misconduct." 284 Kan. at 465. As a result, I would affirm the district court's decision to apply *Leon*'s good-faith exception and deny the motion to suppress.